(114 So. 308)

## GULF TRADING CO. v. RADCLIFF.
### (1 Div. 437.)

Supreme Court of Alabama. Oct. 20, 1927.

1. **Brokers** ☞7—In owner's communication to broker that, unless deal was closed before certain time, option was void, word "option" did not necessarily import option to buy only; agency having elements of option.

Where property owner, who plaintiff broker claimed had authorized plaintiff to sell property, stated in writing that he gave plaintiff until 6 p. m. Saturday, May 30, 1925, to close up deal of property mentioned, and that after 6 p. m. option was null and void, word "option" did not necessarily import an option to buy only, since the ordinary real estate agency has many elements of an "option."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Option.]

2. **Evidence** ☞442(4)—Where written instrument offered by owner could be regarded as incomplete memorandum showing terms on which agent was authorized to sell, evidence of parol agreement to pay commissions was admissible.

In action by broker to recover commissions for sale of real estate, where instrument providing "we give you until 6 p. m. Saturday, May 30, 1925, to close up deal of Wilson property located on Mobile Bay at $40 per front foot. There is about 1,350 foot frontage. After 6 p. m. Saturday May 30, 1925, this option is null and void," introduced by defendant, could be regarded as incomplete memorandum showing terms agent was authorized to submit to prospective purchasers, letting matter of compensation rest in parol, evidence of parol agreement to pay commissions was admissible.

3. **Brokers** ☞50—Where owner extended agent's time to sell property to Monday morning, agent's commissions were earned, if on that date purchaser was ready, able, and willing to buy.

Where landowner admitted having extended time for agent to close deal to Monday morning, if owner was notified on Sunday morning of purchaser's agreement to purchase on terms specified, and if on Monday purchaser was ready, able, and willing to close deal, agent's commissions were fully earned, and agent could recover whether sale was consummated or not.

4. **Brokers** ☞50—Where limit of time is fixed by agency contract, broker must fully perform required service within that time to recover commission.

Where limit of time is fixed by real estate agency contract, broker must fully perform service within time, else no right to commis-

sion accrues, which service involves finding purchaser willing and able to purchase on satisfactory or prescribed terms, and agent must be efficient, but not necessarily sole agent in bringing together minds of parties.

**5. Brokers ☞50—If broker's time limit expires before he has brought purchaser into communication with owner, owner may treat relations at end.**

Where broker's time limit expires before he has brought purchaser into communication with owner, owner may treat all relations as at end, and decline to go further, and no commissions are due.

**6. Brokers ☞50—Time limit of real estate agency contract may be waived or extended.**

Time limit of real estate agency contract may be waived or extended, and, if agent, with knowledge and acquiescence of owner, goes on with negotiations, and sale results, commissions are due.

**7. Brokers ☞56(3)—Where owner, after time limit, makes sale to customer, known to have been enlisted by agent whose services constitute efficient cause of offer to purchase, on similar terms, commissions are due.**

Where owner, after time limit of broker's contract, continues negotiations with customer, known to have been enlisted by broker whose services constitute efficient cause of offer to purchase, and owner, thus appropriating services of broker, closes on terms substantially equal to those offered through broker, commissions are due.

**8. Brokers ☞56(3)—Owner's continuing relations, after time limit, with purchaser procured by agent whose services are efficient cause of purchase, continues relation with agent.**

Owner's continuing relations, after real estate agent's time limit has expired, with purchaser procured by agent whose services have proceeded to such point as to be efficient cause of purchase, continues relation with agent.

**9. Estoppel ☞54—Waiver is based on knowledge of matters claimed waived.**

Waiver is based on knowledge of matters alleged to be waived.

**10. Brokers ☞50—If real estate agent has failed to earn commissions within time stipulated, owner may deal with property as if no agency had existed.**

If real estate agent has failed to earn his commissions within time stipulated, owner treating all relations as at an end is free to deal with property generally as if no agency had existed, and in such case owner need not inquire of each one who approaches him whether he was interested in property through erstwhile agent.

**11. Brokers ☞56(3)—If owner prevents agent's closing sale within time limit, and later closes deal, commissions are due agent.**

Where owner obstructs or hinders agent in concluding negotiations by avoiding interviews with agent or customer, by encouraging buyer to delay his purchase, or any other device, and thereafter, acting directly or through another,

he closes deal with customer procured by agent on as good, or even less favorable, terms, commissions are due agent.

**12. Brokers ☞44—Where, pending negotiations, owner fraudulently revokes real estate agency, and closes deal with agent's client, commissions are due.**

Where, pending negotiations, owner fraudulently revokes real estate agency, or partially revokes same by reducing time, depriving agent of opportunity to earn commissions, and, taking advantage of agent's services, closes deal with his client, commissions are due.

**13. Brokers ☞10—Real estate agency is revocable in good faith.**

Real estate agency to sell or find purchaser is revocable in good faith, this being application of general rule that, unless agency is coupled with interest in subject-matter or necessary to effectuate security, principal has power to revoke it at will.

**14. Principal and agent ☞151(1)—As to third persons, revocation ends all authority of agent.**

As to third persons, revocation of agency ends all authority of agent.

**15. Principal and agent ☞33—Whether revocation of agency ends obligations of principal to agent depends on nature of contract and status growing out of it.**

Whether revocation of agency ends obligation of principal to agent depends on nature of the contract and status growing out of it.

**16. Brokers ☞56(3)—Where owner, when revoking broker's contract, has bona fide purpose to withdraw property from market, and thereafter learns that broker has enlisted customer, and sells to him, owner must pay commission.**

Where owner, when revoking broker's contract to sell property, has bona fide purpose to withdraw property from market, and thereafter learns that customer has been enlisted by broker, and, finding him ready to buy, makes sale, he must pay commissions, since in such case agent's services must have been efficient cause of purchase.

**17. Brokers ☞56(2)—Where owner revokes broker's agency in good faith, and purchaser appears whom owner does not know was procured by former agent, owner is free to deal with him.**

Where owner revokes agency in good faith, having no purpose to evade payment of commissions, and purchaser thereafter appears whom owner does not know, or have cause to believe, was procured by his former agent, owner is free to deal with him, regardless of agency.

**18. Brokers ☞56(2)—Where owner revokes agency, and agent disclaims that purchaser is his customer, and owner sells at lower price because of no commissions, no commissions are due.**

Where owner, having revoked agency, has reason to believe he is dealing with former agent's customer, but agent, by his own act, or through those secretly representing him, dis-

claims any connection of agent with transaction, and owner is induced to sell at price he is willing to take without deduction for commissions, no commissions are due.

**19. Brokers ⟹56(2)—Owner, revoking agency because offer is too low, and selling at better price to one not known to be agent's client, is not liable for commissions.**

Where owner revokes agency because he considers he is offering property too low without intent to evade commissions, and does sell at better price to one not known or believed to have been procured by former agent he is not liable for commissions.

**20. Brokers ⟹71—Where owner is liable for commissions on sale, they should be allowed on sale price.**

Where there is actual sale under conditions rendering owner liable for commissions, they should be allowed on sale price, since this is contemplation of parties in putting compensation on commission basis.

**21. Trial ⟹253(10)—Instruction regarding sale by owner after time limit of agency held erroneous as ignoring owner's evidence that he did not know purchaser was procured by agent.**

In action for broker's commissions, instruction that, if owner sold property to purchaser procured by broker, even though sale was after time limit fixed by owner, broker could recover, *held* erroneous as ignoring defendant's evidence showing entire want of knowledge that purchaser to whom property was sold after expiration of time limit was procured by plaintiff.

**22. Brokers ⟹88(9)—Instructions that fact that owner, after agency agreement, gave broker option to purchase, did not limit time to procure purchaser, held erroneous under evidence.**

In action to recover real estate broker's commissions, instructions that, if owner employed or agreed to pay commission to broker to sell property, fact that owner subsequently gave broker option to purchase, and limited option to certain date, did not limit time within which agent could procure purchaser, *held* erroneous, where, under evidence for owner, if believed by jury, letter referred to as option did define and limit time for finding purchaser, and had effect of revoking any prior agreement for longer period.

**23. Trial ⟹244(2)—Instruction that, if jury believed undisputed evidence, they would proceed on certain theory, held objectionable as giving undue emphasis to certain evidence.**

In suit for real estate broker's commissions, instruction that, if jury believed undisputed evidence, then, in making up verdict, they should proceed on theory that agent procured D. as purchaser of property, and that owner sold property to D. for certain sum, *held* objectionable as singling out and giving undue emphasis to certain features of evidence.

**24. Brokers ⟹78—Broker need not make demand for commissions before bringing suit.**

There was no duty on part of broker to make demand for payment of commissions before bringing suit.

**25. Brokers ⟹88(10)—Instruction that failure of broker to render bill did not prevent his recovering commission, if he procured purchaser ready and willing to purchase, held misleading.**

In action to recover real estate broker's commissions, instruction that failure of broker to render bill for services constituted no reason why he should not recover, if plaintiff procured purchaser who was ready, willing, and able to purchase property on terms authorized, and to whom defendant actually sold property at higher price, *held* misleading, in view of defendant's evidence that defendant did not know purchaser to whom property was sold after expiration of time limited was procured by plaintiff.

**26. Brokers ⟹88(9)—Instruction that owner cannot sell property to person procured by broker at higher price and escape liability for commissions because time limit expired held erroneous under evidence.**

In action for real estate broker's commission, instruction that owner cannot employ broker to find purchaser for property on certain terms for commission, and then sell property to person procured by broker at higher price, and escape liability for commission on ground that time limit within which broker was to make sale had expired, *held* erroneous, in view of defendant's evidence that he did not know purchaser was procured by plaintiff.

**27. Brokers ⟹88(9)—Instruction on broker's right to recover, where owner calls transaction off because time limit has expired, and later makes sale, held erroneous under evidence.**

Instruction that, if broker procured purchaser, but owner undertook to call transaction off on theory that time limit had expired, and agent procured assistance of others to induce owner to go forward with transaction, and sale was made, broker could recover, *held* erroneous, in view of defendant's evidence showing that defendant did not know purchaser was procured by broker.

**28. Trial ⟹253(10)—Instructions regarding broker's procuring purchaser before time limit held properly refused as ignoring broker's evidence showing revocation with intent to sell at increased price.**

In action to recover real estate broker's commission instructions relating to broker's procuring purchaser before receiving letter stating that property had been withdrawn off market, or prior to expiration of his authority to sell, *held* properly refused as ignoring broker's evidence showing revocation of agency pending negotiations with intent to take advantage of agent's services by selling to his customer at increased price.

**29. Broker ⟹88(9)—Instruction that there must have been actual agreement on part of owner to pay broker commission for "sale" held properly refused as misleading.**

In action to recover real estate broker's commissions, instruction that there must have been actual expressed agreement on part of owner to pay broker commission for "sale" before there could be verdict for plaintiff *held*

properly refused as misleading in requiring agreement for sale as distinct from procuring purchaser with whom owner could conclude sale.

**30. Evidence ⊚⇒121(2)—In action for broker's commissions, broker's telephone conversation with owner's son on receiving revocation note held properly admitted as res gestæ.**

In action to recover real estate broker's commissions, telephone conversation of plaintiff with owner's son on receiving revocation note from owner *held* properly admitted as part of res gestæ as tending to throw light on conduct of both parties.

**31. Evidence ⊚⇒471(2)—Witness' "understanding," when used in sense of recollection, or as expressive of transaction to effect stated, is not inadmissible because of expression.**

Witness' "understanding," when used in sense of his recollection, or as expressive of contract or transaction to effect stated, is not rendered inadmissible by manner of expression.

**32. Trial ⊚⇒85—In action for broker's commission, objection to answer of purchaser to interrogatory regarding facts showing broker's services resulted in sale held properly overruled.**

In action to recover real estate broker's commission, objection to answer of purchaser of property as a whole to interrogatory to state facts within his knowledge tending to show that plaintiff, representing owner, brought property to his notice, and procured his consent to purchase same, and put him in communication with owner, and that broker's services resulted in sale, *held* properly overruled.

**33. Evidence ⊚⇒471(25)—In action for broker's commissions, statements of purchaser regarding broker's services resulting in sale and regarding closing deal, held improperly admitted.**

In action for real estate broker's commission, statement of witness who had purchased property that agent's services resulted in sale, and that, when witness went to office of owner, deal was supposed to be closed with agent, *held* improperly admitted.

**34. Brokers ⊚⇒85(1)—In action for broker's commissions, evidence of sale of neighboring property as part of same transaction, and payment of commissions therefor, held properly admitted.**

In action to recover real estate broker's commissions, evidence of sale of neighboring property, in which parties whom broker induced to help close deal were interested, and payment of commissions therefor, was so related to that involved as part of same transaction that evidence of same and relation of parties thereto was properly admitted.

**35. Brokers ⊚⇒88(9)—Instruction on liability of owner selling to broker's client after time limit held erroneous as not requiring broker's service to be efficient cause.**

In action to recover real estate broker's commission, instruction that, when owner of property, knowing that broker has procured purchaser, sells property at any price to person procured by broker, he becomes liable for commission, although he has postponed sale until after expiration of time limit, *held* erroneous as not requiring services of agent to be efficient cause of sale.

**36. Brokers ⊚⇒88(9)—Instruction declaring owner liable for commission for selling to known client of agent at any price after expiration of time limit held erroneous.**

In action to recover real estate broker's commission, instruction declaring that owner is liable for commission for selling to known client of his agent at any price after expiration of time limit *held* erroneous, since, if owner has in no way hindered sale, and time limit has expired without his fault and he in good faith finds he can sell only at reduced price, and accepts it, he is not liable for commission.

**37. Brokers ⊚⇒56(3)—Where owner sells to agent's client pending agency, fact that owner sells to such client shows that he was ready, able, and willing to purchase.**

In cases where owner sells to agent's client pending agency and in cases of fraudulent device to evade commission, and still reap fruits of his labors, fact that owner does sell to such client is sufficient evidence that he was ready, able, and willing to purchase.

**38. Brokers ⊚⇒84(1)—Where owner sells to broker's client after time limit, broker must show his services were efficient cause of purchase.**

Where owner sells property, after expiration of time given agent to sell, to agent's client, agent must show that his services were efficient cause of purchase in order to recover commission.

**39. Brokers ⊚⇒88(10)—Trial ⊚⇒253(10)—Instruction that fact that owner sold to broker's client showed that he was ready and able to purchase held erroneous as too broad, and as ignoring claim of defendant.**

In action for real estate broker's commission, instruction that fact that owner sold to broker's client was sufficient evidence to show that he was ready, able, and willing to purchase, *held* erroneous as too broad, and as ignoring defendant's claim that sale was made after time limit to purchaser, whom defendant did not know was procured by plaintiff.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action by Robert Herndon Radcliff against the Gulf Trading Company to recover real estate broker's commissions. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The portion of the oral charge made the basis of assignment 28 is as follows:

"If you are reasonably satisfied that he did have this agreement, by the terms of which he was to receive 5 per cent. commission, and if you further find that this plaintiff did obtain and procure as a purchaser of the land one Mr. Dickey, and you further find that the defendant subsequently, even though that was after the

time limit fixed by the defendant, if the defendant actually sold the property to the man Dickey, and you should find that Mr. Dickey was procured by the plaintiff, and that Mr. Dickey was ready, able, and willing to buy the property, and did buy the property, then the plaintiff should be entitled to recover, if the defendant took advantage of the service rendered by the plaintiff, even though the time for making the sale had expired."

The following charges were given at plaintiff's request:

"(3) The court charges the jury that, if they believe from the evidence that the defendant, acting through Mr. Leatherbury, employed the plaintiff, Mr. Radcliff, to procure a purchaser for the property in question known as the Goelet place, and agreed to pay Mr. Radcliff 5 per cent. upon the purchase price for procuring such a purchaser, then the fact that the defendant subsequently gave Mr. Radcliff an option to purchase the property, and limited this option to the 31st day of May, 1925, would not in any manner limit the time within which Mr. Radcliff was entitled to earn his commission by procuring a purchaser.

"(4) The court charges the jury that, if there was a verbal agreement between the defendant represented by Mr. Leatherbury and the plaintiff, Mr. Radcliff, that Mr. Radcliff would procure a purchaser for the defendant, and that he should receive a commission of 5 per cent. for doing so, then this contract was not to any extent modified or affected by the further fact, if it is a fact, that the defendant subsequently gave Mr. Radcliff an option to purchase the property at $40 a front foot, and the expiration of the time limit fixed in such an option would not in any way end Mr. Radcliff's right to earn his commission by procuring a purchaser."

"(5) The court charges the jury that, if they believe the undisputed evidence in this case, then in making up their verdict they will proceed upon the theory that Mr. Radcliff procured Mr. Dickey as a purchaser of said property, and that the defendant sold the property to Mr. Dickey for $66,525."

"(7) The court charges the jury that, when the owner of property, knowing that his broker, whom he has employed to sell the property, has procured a certain purchaser, sells the property at any price that he pleases to accept to the person so procured by the broker, he becomes liable for the commission, even though he has postponed making the sale to the person so procured by the purchaser until after the expiration of the time limit fixed in the contract of employment.

"(8) The court charges the jury that, while it is necessary that a broker, in order to recover his commission, should prove that the person whom he procured was ready, willing, and able to make the purchase, this must be regarded as having been proven, when the evidence shows that the owner of the property sold it to such purchaser, and that the purchaser bought it and paid for it in an amount not less than the price at which the agent had been authorized to make the sale.

"(9) The court charges the jury that the plaintiff in this case was under no obligation whatever to render any bill for his services to the defendant, and the fact that he did not do so constitutes no reason whatsoever why he should not recover in this case, if the evidence shows the contract alleged in the complaint, and that the plaintiff did, in fact, procure a purchaser by the name of Dickey who was ready, willing, and able to purchase the property upon the terms authorized, and to whom the defendant actually sold the property at a higher price.

"(10) The court charges the jury that an owner of property cannot employ another person to find a purchaser for that property upon certain terms for a commission of 5 per cent. and then sell the property to the person so procured by the broker at a higher price, and escape liability for the commission upon the grounds that the time limit within which the broker was to make the sale had expired.

"(11) The court charges the jury that, if Mr. Radcliff was employed by the defendant to procure a purchaser for the property in question at a 5 per cent. commission, and did procure Mr. Dickey, and Mr. Dickey was ready, willing, and able to purchase the property, but the defendant undertook to call the transaction off upon the theory that the time limit had expired, and Mr. Radcliff then procured the assistance of Mr. Boykin and Mr. Prine to induce the defendant to go forward with the transaction and make the sale to the purchaser so procured by Mr. Radcliff and Mr. Boykin, and Mr. Prine, acting for Mr. Radcliff, did see Mr. Leatherbury, and insisted upon his making a sale to the purchaser, Mr. Dickey, whom Mr. Radcliff had obtained, and Mr. Leatherbury did take advantage of the services of Mr. Radcliff in procuring the purchaser, and did sell the land to said purchaser for a price exceeding the price which he had authorized Mr. Radcliff to offer the property for, then the defendant is liable to the plaintiff for 5 per cent. commission upon the amount for which he sold the property to Mr. Dickey."

The following requested charges were refused to defendant:

"(4) The court charges the jury that, unless they are reasonably satisfied that J. L. Dickey was ready, able, and willing to purchase the property in question prior to the receipt by Radcliff of the letter telling him that the property had been withdrawn off the market, or prior to the expiration of his authority to sell, then your verdict should be for the defendant.

"(5) The court charges the jury that, under the evidence in this case, if they believe that the defendant revoked the authority of Radcliff to sell, or that his authority to sell expired prior to the time when Dickey was ready, able, and willing to buy, then you must find for the defendant under count 3 of the plaintiff's amended complaint.

"(6) The court charges the jury that under the evidence in this case the defendant had the right to revoke the agency of Radcliff to sell the Goelet place at any time, and further charges that, if they are not reasonably satisfied that a purchaser ready, able, and willing to buy said property had not been procured by Radcliff prior to the time when his agency was revoked, if you further find that it was revoked, or prior to the expiration of his agency, then your verdict should be for the defendant."

"(9) The court charges the jury that there must have been an actual and expressed agreement on the part of the defendant to pay to the

plaintiff a commission of 5 per cent. for the sale of the Goelet place before you can find a verdict for the plaintiff under count 3 of the plaintiff's complaint as amended."

The following is the ninth interrogatory propounded to witness Dickey:

"(9) Please state any other facts that may be within your knowledge showing, or tending to show, that Mr. Robert Herndon Radcliff, representing the Gulf Trading Company, brought the Goelet property to your notice, and procured your consent to purchase the same from the Gulf Trading Company, and put you in communication with that company, and that his services resulted in the sale to you."

The answer is as follows:

"I understood that, after seeing the property with Mr. Robert Herndon Radcliff, he had seen the Gulf Trading Company, and that they were willing to sell the property, and it was my understanding at all times that he was representing the Gulf Trading Company until the sale was closed. His services did result in my purchasing the property from the Gulf Trading Company."

Inge & Bates, of Mobile, for appellant.

Where a broker is employed to sell real estate within a specified time, he is not entitled to recover commissions under his contract, unless he procures a purchaser within that time. Hughes v. Daniel, 187 Ala. 41, 65 So. 518. A principal who has empowered an agent to sell may at any time before sale revoke the agent's authority. Chambers v. Seay, 73 Ala. 372; Jos. Espalla, Jr., & Co. v. Warren, 197 Ala. 601, 73 So. 23; Bailey v. Smith, 103 Ala. 641, 15 So. 900; Cronin v. American Securities Co., 163 Ala. 533, 50 So. 915, 136 Am. St. Rep. 88. An agent is not entitled to his commissions until he has produced to his principal a person who is able, ready, and willing to buy on the terms prescribed by such principal within the period allowed, or, if the terms is not limited, before the revocation of his agency. Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Eldorado Coal Co. v. Rust & Shelburne, 202 Ala. 625, 81 So. 567. When a witness undertakes to state his "understanding" of a contract or trade, he is merely giving his conclusion or opinion, and this is inadmissible. A witness cannot be asked if he was ready, willing, and able to carry out the terms of a contract of purchase, because such question calls for his conclusion or opinion. Hart v. McClellan, 41 Ala. 251. A witness cannot be asked to state "any other facts" within his knowledge, showing or tending to show facts material to the issues of the case, since such question calls for the conclusion or opinion of the witness, and because such question is too general. A witness' statement that another's "services did result in my purchasing the property" is the mere conclusion or opinion of the witness, and is objectionable testi-

mony; and his statement that, when he went to a certain place, the deal in question "was supposed to be closed," is the conclusion or opinion of the witness, and is a guess or conjecture.

Harry T. Smith & Caffey, of Mobile, for appellee.

The granting to plaintiff of an option to purchase in no way interfered with or limited plaintiff's right to make a sale and earn his commission. Cox v. Morton, 193 Ala. 401, 69 So. 500; Jackson v. Berry-Snellings, 211 Ala. 175, 100 So. 111; Hannon v. Espalla, 148 Ala. 313, 42 So. 443; Cole v. Crump, 174 Mo. App. 215, 156 S. W. 769. The owner, having employed a broker to procure a purchaser for his property upon a given commission, cannot obtain the benefit of the broker's services by selling to the purchaser procured by him, and avoid payment of commission by first canceling the agent's authority. Jos. Espalla, Jr., Co. v. Warren, 197 Ala. 601, 73 So. 23; Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Weisels-Gerhart v. Epstein, 157 Mo. App. 101, 137 S. W. 327; Hutto v. Stough, 157 Ala. 571, 47 So. 1031; Schramm v. Wolff (Tex. Civ. App.) 126 S. W. 1185. Where the broker has done everything necessary to earn his commission under his contract to procure a purchaser, he cannot be deprived of compensation because the owner's sale was without intent to defraud him. Alexander v. Smith, 180 Ala. 541, 61 So. 68. The owner making sale to the purchaser procured by the broker will be held to have waived the time limit. Alford v. Creagh, 7 Ala. App. 358, 62 So. 254. It is immaterial whether or not defendant knew Boykin & Prine, whose services he was accepting, were the representatives of plaintiff. Burns v. Campbell, 71 Ala. 271; Alford v. Creagh, supra; West. Union Tel. Co. v. Rowell, 153 Ala. 314, 45 So. 73. The conversation between plaintiff and Tommy Leatherbury was admissible. Western Union v. Rowell, supra. A witness may state his understanding of an agreement. Griffin v. Isbell, 17 Ala. 184; Saltmarsh v. Bower, 34 Ala. 613; Shafer v. Hausman, 139 Ala. 241, 35 So. 691; 3 Ency. Evi. 520. The testimony of Dickey that he was ready and willing to buy was competent. Robinson v. Greene, 148 Ala. 434, 43 So. 797; Hockensmith v. Winton, 16 Ala. App. 324, 77 So. 918; Lambert v. Southern R. Co., 214 Ala. 439, 108 So. 255. Likewise that the services of plaintiff resulted in his purchase. L. & N. v. Stewart, 128 Ala. 330, 29 So. 562; Stout's Mt. Coal Co. v. Tedder, 189 Ala. 640, 66 So. 619; Penna. Cas. Co. v. Perdue, 164 Ala. 508, 51 So. 352; Torry v. Krauss, 149 Ala. 200, 43 So. 184. The oral charge of the court was not subject to criticism. Griswold v. Pierce, 86 Ill. App. 406; Schramm v. Wolff (Tex. Civ. App.) 126 S. W. 1185; Alford v. Creagh, supra. There was no error in charg-

es given for plaintiff. Cox v. Morton, supra; Hannon v. Espalla, supra; Cole v. Crump, supra; Burns v. Campbell, supra. Nor in refusal of defendant's requested charges. Glass v. Smith, 21 Ala. App. 325, 109 So. 170; De Briere v. Yeend Bros., 204 Ala. 647, 86 So. 528; Minto v. Moore, 1 Ala. App. 556, 55 So. 542; Handley v. Shaffer, supra.

BOULDIN, J. The suit is to recover alleged commission due a real estate broker.

The complaint contained the common count for work and labor done, and a special amended count No. 3, as follows:

"The plaintiff claims of the defendant $3,326.25 damages for the breach of an agreement entered into on, to wit, the 23d day of May, 1925, as follows, that is to say, that the defendant employed the plaintiff to procure for it a purchaser for certain land, sometimes known as the Wilson property, and sometimes as the Goelet place, and agreed to pay the plaintiff for obtaining such purchaser 5 per cent. of the purchase price, for which the defendant might sell said property to such purchaser, and the plaintiff avers that, in accordance with said contract, he procured a purchaser for said property, and the defendant sold said property to said purchaser for a large sum of money, to wit, the sum of more than $66,000, the defendant failed and refused to pay to the plaintiff the commissions due to him on said sale."

The matter of special plea No. 5 was covered by the general issue, and evidence was fully presented thereunder. Striking plea 5, on motion of plaintiff, was harmless, and therefore its sufficiency as addressed to the third count need not be considered. As this plea, however, aptly sets forth the theory of the defendant, it is here inserted:

"For further answer to the said third count of the plaintiff's complaint as last amended the defendant says: That the only agreement that the defendant ever made with the plaintiff, and that the only authority that the defendant ever gave the plaintiff, either for the sale of the property described in the third count or for the plaintiff to find a purchaser for said property ready, able, and willing to buy, was an agreement in writing which the defendant entered into with the plaintiff on the 26th day of May, 1925, and which is as follows:

" 'We give you until 6 p. m. Saturday, May 30, 1925, to close up deal of Wilson property located on Mobile Bay at $40 per front foot. There is about 1,350 foot frontage. After 6 p. m. Saturday, May 30, 1925, this option is null and void.'

"And the defendant avers that the plaintiff failed to close said deal or to find a purchaser ready, able, and willing to buy said property on or before Saturday, May 30, 1925, at or before the hour of 6 p. m., and on June 1, 1925, the defendant notified the plaintiff in writing as follows:

" 'We have withdrawn the Wilson property off the market. We do not care to sell at the present time. Please govern yourself accordingly.'

"And the defendant further avers that the said authority which had been given to the plaintiff, as aforesaid, was thereby withdrawn, and that thereafter the plaintiff had no authority to purchase the said property or to sell the same for the defendant, or to find a purchaser ready, able, and willing to buy it.

"Wherefore the defendant says that the plaintiff is not entitled to recover in this action."

The testimony of plaintiff, Robert Herndon Radcliff, was to the effect that about May 23d he entered into an agreement with defendant through its president, George S. Leatherbury, whereby plaintiff was to sell the property at price named on 5 per cent. commission. Radcliff requested Leatherbury to put it in writing. On May 26th he called at Leatherbury's office, and was handed the letter of that date set out in the plea above. Appellant's view is that this paper is the sole memorial of the contract between the parties; that it carries merely an option to buy the property at a fixed price; that evidence of the parol agreement to pay commission to a sales agent adds to, or varies, the terms of the written contract, and is inadmissible.

This writing purports to give a limited time to "close up a deal" on the described property at a stated price. This is entirely consistent with the idea that a "deal" was then in progress or in contemplation pursuant to former arrangement.

Both parties agree that in the former interview it was understood an outside party should be found as purchaser, and that, at Radcliff's request, Leatherbury induced his associates in ownership of other neighboring property to engage plaintiff to sell it on 5 per cent. commission.

They differ as to any agreement to pay commissions on property here involved. Appellant contends plaintiff was to take an interest as copurchaser.

[1] The use of the word "option," as known among real estate people, does not necessarily import an option to buy only. The ordinary real estate agency, an agreement in effect that, if the agent procures a purchaser ready, able, and willing to buy on the terms named, he shall be paid a commission, has many of the elements of an option. The agent binds himself to no defined efforts or outlays.

The performance of the service while the agency exists is ordinarily a condition precedent to the right to commissions. There may be an option to sell as well as option to buy. As an option to buy the writing before us would be void for want of consideration. It expresses no consideration as required by the statute of frauds. It may be regarded as an incomplete memorandum showing the terms the agent was authorized to submit to prospective purchasers, letting the matter of compensation as between owner and agent rest in parol.

[2] The evidence of a parol agreement to pay commissions was therefore admissible. Sayre v. Wilson, 86 Ala. 151, 5 So. 157. If

plaintiff's evidence in that regard be true, the writing did not cut off his right to recover commissions, if earned.

Further evidence on behalf of plaintiff went to this effect: Mr. Radcliff, having reason to think Mr. J. L. Dickey of New Orleans was, or could be, interested in the property, approached Mr. Leatherbury, and secured the agency to sell on commission at the price named in the letter of May 26th above. Having gotten in touch with Mr. Dickey, and induced him to come to Mobile, the property was inspected on Saturday, May 30th, whereupon Mr. Dickey advised Mr. Radcliff, in the presence of others, that he would take the property. Mr. Radcliff accepted Mr. Dickey's invitation to spend Sunday with him at Ocean Springs, both returning to Mobile Monday morning with the purpose to close up the transaction. Meantime Mr. Frank Boykin, one of the men interested in the neighboring property, and with the party on Saturday, agreed to and did notify Mr. Leatherbury on Sunday morning of Mr. Dickey's agreement to buy the property. On return to Mobile Monday forenoon Mr. Radcliff found at his office the note of June 1st announcing a withdrawal of the property from the market, in effect revoking Radcliff's agency.

[3] We note here that Mr. Leatherbury admits having extended the time to Monday morning June 1st. If he was notified on Sunday morning of Mr. Dickey's agreement to purchase on the terms specified, although no contract was made, or could be lawfully made, on that day, this information would abide with Mr. Leatherbury until Monday, and if, in fact, on that day Dickey was ready, able, and willing to close the deal, Radcliff's commissions were fully earned. The revocation was too late, and plaintiff may recover whether a sale was consummated or not.

Plaintiff's evidence proceeds: On receiving the revocation note of June 1st, Radcliff called Leatherbury by telephone at his office. His son, Tommy Leatherbury, secretary of defendant company, answered, saying to call his father again in 30 minutes. Radcliff called again, Tommy again answered, and said call again in 30 minutes. Radcliff, impatient, said to Tommy: "'I don't want to call him in 30 minutes; you know what I want to talk to him about. I have sold Dickey this property down there, and he is trying to run out on me.'" Tommy said: "I'll tell you what papa is going to do about it. He is not going to deliver the property. He cannot get it."

Thereupon Mr. Radcliff enlisted Messrs. Boykin and Prine, interested in the neighboring property, to act as a go-between and persuade Mr. Leatherbury to conclude the trade as agreed upon. In this they failed. Finally, on June 6th, they obtained from him a new price of $66,525, and on the same day the property was sold to Mr. Dickey at this price, some $13,725 in excess of the price first named.

Defendant's evidence went to the effect that the letter of May 26th expressed the sole agreement of the parties, gave the same time and terms as first named; that thereafter Mr. Leatherbury heard no more from Mr. Radcliff until the time expired Saturday, May 30th, or the extended date Monday morning, June 1st; that the note of that date was sent that there be no misunderstanding; that the subsequent negotiations by Messrs. Boykin and Prine were in their own name; that they expressly disclaimed any connection with Radcliff; that Mr. Leatherbury had no knowledge that Mr. Dickey was a customer of Mr. Radcliff; that he nor any one else had agreed to take the property before the time expired; that the final offer was made to Boykin and Prine personally; and that the first-known connection of Dickey with the matter was when he was presented and the deal closed June 6th, and then only as a customer of Boykin and Prine.

One other phase of plaintiff's evidence goes to the effect that is the original understanding of May 23d the plaintiff was to have ten days to find a purchaser; that the paper of May 26th reduced this time limit; that, when it was handed to plaintiff, he took Leatherbury to task for thus cutting down the time, and it was then verbally agreed that he should have ten days. All this is disputed by defendant's evidence.

We do not agree with appellee that this presents a case of two parallel contracts, one a verbal agreement to sell on commission within ten days, and the other a written option to buy within a shorter period at the same price, without commission.

The time limit in the paper was directed to whatever deal was then in view. The emphasis in the document is on the time limit.

But, in one view of the case, the testimony touching the original agreement for ten days was admissible. If plaintiff had entered upon negotiations to interest a purchaser on the faith of a ten-day period to consummate the deal, and defendant thereafter reduced the time, such action would be tantamount to a revocation of the agency as of the date last fixed. The rules of law in case of revocation hereinafter considered would apply. Evidence of the ten-day agreement at the time the paper was delivered was admitted without objection. In either event, a revocation of agency and subsequent sale to a customer enlisted by the agent was involved in the trial. Without question the final sale was after the expiration of the time limit. Without conflict, the evidence shows the sale was made to a customer found and interested by the plaintiff.

The evidence that Prine and Boykin were

acting for and on behalf of plaintiff, and that his service was the efficient cause of the sale, would be without conflict, but for the testimony of Mr. Leatherbury that Prine and Boykin denied any connection of plaintiff with their negotiations.

In passing upon the various rulings of the trial court touching the law of the case, we try to keep in mind these several features of the evidence, and the varied conclusions the jury were authorized to reach from the testimony and its legitimate inferences.

The rules of law governing a sale by the owner after the expiration of the time limit fixed by contract to a purchaser first enlisted or procured by the broker apply to one phase of evidence; and the rules governing such sale where the agency is terminated by revocation apply to another, as the jury may find the facts.

[4, 5] When a limit of time is fixed by contract, the general rule is the broker must fully perform the required service within the time, else no right to commission accrues. This service involves finding and producing a buyer willing, able, and ready to purchase upon terms prescribed, and, if not prescribed, such as are satisfactory to the owner. He must be the efficient, not necessarily the sole, agent in bringing together the minds of the parties, and bringing them into such communication with each other that they may close the deal without further duty or activity on the part of the agent. This usually involves disclosing to the owner the identity of the purchaser, the person with whom he is expected to deal. No matter how far the negotiations have gone between agent and customer, until the latter is brought into communication with the owner, so there can be a meeting of the minds of the parties, the service of the broker is incomplete. If at that stage the time limit expires, the owner may treat all relations as at an end, may decline to go further, and, if so, no commissions are due. Hughes v. Daniel, 187 Ala. 41, 65 So. 518; Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Eldorado Coal Co. v. Rust & Shelburne, 202 Ala. 625, 81 So. 567.

[6, 7] The time limit, like other terms of the agency contract, may be waived or extended. So, if the agent, with the knowledge and acquiescence of the owner, goes on with the negotiations, and a sale results, his commissions are due. If the owner continues the negotiations with a customer known to have been enlisted by the agent whose services constitute the efficient cause of the offer to purchase, and the owner, thus appropriating the services of the agent, closes on terms substantially equal to those offered through the agent, commissions are due.

[8, 9] The owner should not call time out on the agent while he redeems the time in harvesting the fruits of his labors. Extension of time for the purpose of reaping benefits should extend it as to obligations. Continuing relations with the purchaser procured by the agent, and whose services have proceeded to such point as to be the efficient cause of the purchase, continues the relation with the agent. Espalla v. Warren, 197 Ala. 601, 73 So. 23; Bailey v. Padgett, 195 Ala. 203, 70 So. 637; Henderson v. Vincent, 84 Ala. 99, 4 So. 180; Alford v. Creagh, 7 Ala. App. 358, 62 So. 254; Howard v. Street, 125 Md. 289, 93 A. 923; note to Emerson v. Phelps, 26 A. L. R. 780 et seq.; Walker's Real Estate Agency, § 557, p. 496; 9 C. J. 608, note 90. But waiver is based on knowledge of matters alleged to be waived.

[10] If the agent has failed to earn his commissions within the time stipulated, the owner, treating all relations at an end, is free to deal with his property generally as if no agency had ever been. In such case it is not the law that the owner must inquire of every one who approaches him whether he was interested in the property through the erstwhile agent. The general rule announced in Handley v. Shaffer, 177 Ala. 636, 59 So. 286, to the effect that, if the owner accepts a purchaser sent to him or procured by the agent, and closes with him on terms the agent was authorized to offer, it is immaterial whether the owner knew he was dealing with the agent's customer, applies to cases of pending agency, cases in which the owner may expect a buyer sent by the agent.

[11, 12] The owner is under the duty of good faith in all dealings with his agent. Hence it is well settled that, if he obstructs or hinders the agent in concluding the negotiations within the time limit by avoiding interviews with the agent or customer by encouraging the buyer to delay his purchase, or any other device, and thereafter, acting directly or through another, he closes the deal with the customer procured by the agent on as good, or even less favorable, terms, commissions are due the agent. Likewise if, pending negotiations, he fraudulently revokes the agency, or partially revokes the same by reducing the time, depriving the agent of the opportunity to earn commissions, and, taking advantage of the agent's services, he closes with his client, commissions are due. Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Chambers v. Seay, 73 Ala. 372; Alexander v. Smith, 180 Ala. 541, 61 So. 68; Hughes v. Daniel, 187 Ala. 41, 65 So. 518; Hutto v. Stough, 157 Ala. 566, 47 So. 1031; Henderson v. Vincent, 84 Ala. 99, 4 So. 180; Cook & Bro. v. Forst, 116 Ala. 395, 22 So. 540; Everson v. Phelps, 104 Or. 288, 206 P. 306, 26 A. L. R. 780; 9 C. J. p. 564, note 48.

[13-15] Subject to the rule of good faith, it is well recognized that a real estate agency to sell or find a purchaser is revocable. This is but an application of the general rule that, unless the agency is coupled with an interest

in the subject-matter, or necessary to effectuate a security, the principal has power to revoke it at will. This inheres in the nature of the relation. Agency is an incident to the business in which it is employed. The power to control or to cease business is the power to and agencies to carry it on. As to third persons, revocation ends all authority of the agent. Whether it ends the obligations of the principal to the agent depends on the nature of their contract and the status growing out of it.

As applied to real estate agencies, where a stipulated time has been given, and the agent, as contemplated, has incurred labor and expense upon the expectation of earning commissions, within such time, his rights and remedies upon revocation have been the subject of divergent views in the court. Millican v. Haynes, 212 Ala. 537, 103 So. 564; Blount County Bank v. Brice, 209 Ala. 670, 96 So. 769; Cronin v. American Sec. Co., 163 Ala. 533, 50 So. 915, 136 Am. St. Rep. 88; Walker's Real Estate Agency, § 15, p. 19; 2 Mechem on Agency, § 2465; 9 C. J. p. 565, note 50.

We are not here concerned with this question as applied to cases where the matter is ended by revocation, but with the right of the broker to commissions in case the owner proceeds, after revoking the agency, to sell to a purchaser procured by the agent.

[16, 17] In such case, if the owner thus knowingly appropriates the services of the agent, the revocation should be deemed as merely colorable, if the terms of sale are as good or better than offered through the broker. The high morality of the law cannot sanction a revocation relieving of burdens, but holding on to the benefits. We do not think it of consequence that the owner had no such purpose at the time of revocation, nor that he should have then known negotiations were on with the customer. Though he may have had at the time the bona fide purpose to withdraw the property from the market, if he thereafter learns that a customer has been enlisted by the agent, and, finding him ready to buy, takes the opportunity to utilize such service, in good faith he should pay. In such case, the agent's services must have been the efficient cause of the purchase. On the other hand, if he revoked the agency in good faith, having no purpose to evade payment of commissions, and a purchaser thereafter appears, one the owner does not know or have cause to believe was procured by his former agent, the owner is free to deal with him, regardless of the agency.

[18] Under one phase of the evidence, another condition arises. If the owner does have reason to believe he is dealing with the former agent's customer, but the agent by his own act, or, through those who are secretly representing him, disclaims any connection of the agent with the transaction, and the owner is induced to sell at a price he is then willing to take without deduction for commissions, no commissions are due. Good faith must be observed on both sides. Henderson v. Vincent, 84 Ala. 99, 4 So. 180.

[19] The amount of profit the owner makes is without consequence. If he revokes the agency because he considers he is offering the property too low, without intent to evade commissions, and does sell at a better price to one not known or believed to have been procured by the former agent, he is not liable for commissions.

[20] Where there is an actual sale under conditions rendering the owner liable for commissions, they should be allowed on the sale price. This is the contemplation of the parties in putting the compensation on a commission basis.

The instructions given the jury by the trial court were at variance with the principles above discussed in several instances.

[21] The portion of the court's oral charge made the basis of the twenty-eighth assignment of error ignored defendant's evidence tending to show entire want of knowledge or notice that the purchaser to whom the property was sold after the expiration of the time limit was procured by the plaintiff. It is subject to other criticism.

[22] Charge No. 3 given for plaintiff was error.

Under the evidence for defendant, if believed by the jury, the letter of May 26th did define and limit the time for finding a purchaser, and had the effect of revoking any prior agreement for a longer period.

Charge 4, given for plaintiff, is subject to the same criticism.

[23] Charge 5 singles out and gives undue emphasis to certain features of the evidence. Such charges may well be refused.

[24, 25] There was no duty to make demand for payment of commissions before suit brought. In this regard charge 9 is free from error. It may have been well refused for other misleading tendencies already pointed out.

[26, 27] Charges 10 and 11, given for plaintiff, should have been refused for reasons heretofore given.

[28] Charges 4, 5, and 6, refused to defendant, ignore all the evidence of plaintiff tending to show revocation of the agency pending negotiations with intent to take advantage of the services of the agent by selling to his customer at an increased price. They were properly refused.

[29] Charge 9, refused to defendant, was misleading in requiring an agreement "for a sale," as distinguished from procuring a purchaser with whom the owner could conclude the sale. Handley v. Shaffer, supra.

[30] The telephone conversation with Tommy Leatherbury was properly admitted as part of the res gestæ. It tended to throw light upon the conduct of both parties.

The motion to suppress the deposition of J. L. Dickey was properly overruled.

[31-33] The witness' "understanding," when used in the sense of his recollection, or as expressive of a contract or transaction to the effect stated, is not rendered inadmissible by this manner of expression. The objection to answer of witness Dickey to the ninth interrogatory as a whole was overruled without error. The statement of this witness: "His services did result in my purchasing the property from the Gulf Trading Company," and the further statement: "When I went to the office of the Gulf Trading Company, the deal was supposed to be closed with Mr. Radcliff," should have been excluded on defendant's motion.

[34] The sale of the neighboring property in which Boykin and Prine were interested, and payment of commissions therefor, was so related to that involved here, as part of the same transaction, that evidence of same and the relation of the parties thereto was properly admitted.

[35, 36] Charge 7 given for plaintiff was erroneous under the principles heretofore announced. It does not require that the services of the agent be the efficient cause of the sale. It also declares the owner liable to commission for selling to a known client of his agent at any price after the expiration of the time limit. If he has in no way hindered or obstructed a sale, the time limit has expired without his fault, and he, in good faith, finds he can sell only at a reduced price and accepts it, he is not liable for commissions.

[37] In cases where the owner sells to his agent's client pending the agency, and in cases of any fraudulent device to evade commissions, and still reap the fruits of his labors, the fact that the owner does sell to such client is sufficient evidence that he was ready, able, and willing to purchase. Culver v. Gambill Realty Co., 214 Ala. 84, 107 So. 914; De Briere v. Yeend Bros. Realty Co., 204 Ala. 647, 86 So. 528; Handley v. Shaffer, 177 Ala. 636, 59 So. 286.

[38] But a sale by the owner after the expiration of the time limit is not subject to this rule. Because a purchaser was ready to purchase at a later date does not prove he was ready during the pendency of the agency. In such case, the plaintiff must show his services were the efficient cause of the purchase.

[39] Charge 8 given for the plaintiff was too broad, and ignored the case which defendant's testimony tended to support.

For the errors pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.