118

**HUDSON–THAMES CORPORATION,**
a corporation, Plaintiff,

v.

**RYAN STEVEDORING COMPANY, Inc.,**
a corporation, Defendant.
**Civ. A. No. 2346.**

United States District Court
S. D. Alabama, S. D.
March 2, 1962.

———◆———

Nicholas S. McGowin, of Thornton &
McGowin, Mobile, Ala., for plaintiff.

Marshall J. DeMouy, of Armbrecht,
Jackson, McConnell & DeMouy, Mobile,
Ala., for defendant.

DANIEL HOLCOMBE THOMAS,
District Judge.

This is an action on a brokerage contract to recover a commission allegedly earned when the defendant entered into a contract with a third party to discharge ore from a ship.

This Court has jurisdiction of the action in that the plaintiff is a New York corporation; the defendant is an Alabama corporation engaged in the general stevedoring business, conducting operations in Mobile, Alabama, Gulfport, Mississippi and other gulf ports; and the amount in controversy exceeds the sum of $10,000 exclusive of interest and costs.

Plaintiff brought this action seeking the recovery of commissions allegedly due it as the result of a contract allegedly entered into between the plaintiff and the defendant. On the 10th day of May 1960, Ryan, on the basis of the pleadings and affidavits, moved the court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; plaintiff filed a cross-motion for summary judgment under the same rule. Each of these motions was denied. After the filing of certain depositions, plaintiff again moved for a summary judgment, and defendant renewed, by cross-motion, its motion for summary judgment. The court again denied each motion. Subsequently, on the basis of the depositions and pleadings theretofore filed together with the deposition of one Leon Gray, Ryan, with leave of court having been granted, again renewed its motion for summary judgment; plaintiff likewise renewed its motion. Each of the parties contends, and the court so finds, that there is no genuine issue as to any material fact.

In February 1959, the plaintiff learned that Ayrton Metal & Ore Corporation of New York, a company engaged in the importing and exporting of non-ferrous metals, was contemplating importing into the United States by ship from Mac-Kenzie, British Guiana, several hundred

tons of bauxite ore for delivery to the United States Government pursuant to a proposed contractual arrangement between Ayrton and the United States Government. The port of discharge had not been definitely established at that time, though it was to be a United States gulf port. The plaintiff, acting as agent for Murray Stevedore Company (a general stevedoring concern with operations and offices limited to Mobile, Alabama) for whom plaintiff had been acting as agent in New York for some three years in the procurement of stevedoring business, contacted Ayrton and sought for Murray's account the discharge of such vessels. While the port of discharge remained indefinite for several months, plaintiff had hopes that Mobile would be designated as the port of discharge and continued its efforts with Ayrton, solely on Murray's behalf, from February 1959 to August 1959. Under the terms of Ayrton's contractual arrangements with the United States Government, which were finalized between May and August 1, 1959, Ayrton was responsible for the discharge of the bauxite ore at the United States port of delivery.

In early August 1959, it became apparent that the port of discharge of the bauxite ore would not be Mobile, Alabama, but would be Gulfport, Mississippi. The plaintiff attempted to induce Murray to set up operations in Gulfport in anticipation of the bauxite movement, but Murray refused to do so. Some short time after learning that Gulfport would probably be the port of discharge, officials of Murray contacted the defendant, who had offices in Gulfport, Mississippi, regarding the proposed bauxite movement into Gulfport, and inquired of the defendant if it would be interested in discharging the bauxite at the port of Gulfport. The defendant indicated that it would be interested. Officials of Murray then notified the plaintiff to this effect. Whereupon, the President of the plaintiff corporation telephoned the President of the defendant corporation and it was agreed by the parties that the plaintiff corporation would represent the defendant corporation in attempting to procure the business in question for the defendant corporation, if Gulfport was designated as the port of discharge; and defendant would pay the plaintiff five cents per ton of bauxite discharged by the defendant at Gulfport for Ayrton. The defendant confirmed its arrangement with the plaintiff by letter dated August 21, 1959.[1] It was further agreed between the plaintiff and the defendant that in the event the port of discharge should be finally determined as Mobile, the plaintiff would not represent the defendant, but rather would act on behalf of its regular principal, Murray.

The port of Gulfport was ultimately designated as the port of discharge of the bauxite and two contracts were awarded by Ayrton to accomplish the discharge. The first contract was for the discharge of two vessels carrying approximately 22,300 tons. The second contract covered the discharge of 425,000 tons of bauxite ore.

On August 21, 1959, Ayrton issued invitations to four stevedoring companies to bid on the first contract for the discharge of the two vessels. An invitation to bid was issued to a fifth company a few days later. Included among those invited to bid were the defendant, and Murray, and Walsh Stevedoring Company, Inc., (the defendant's only competitor with offices and stevedoring operations in Gulfport, Mississippi). Pursuant to the invitations to bid, Ryan and Walsh, among others, each submitted a bid. On or about September 1, 1959, the first contract was awarded by Ayrton to Walsh on the basis that Walsh had submitted the lowest competitive bid. On September 16, 1959, the defendant verbally terminated its previous arrangement with the plaintiff to act on its be-

---

1. The written confirmation reads in part: "Upon the signing of a contract with Ayrton Metal and Ore Corporation to discharge bauxite to truck hoppers at Gulf-port, Mississippi, we will pay to you for your services, the sum of $.05 per ton of 2240 pounds for each ton handled under such contract."

half. On September 21, 1959, the defendant confirmed to the plaintiff by letter that it was terminating its previous agreement with the plaintiff and advised the plaintiff that it was no longer authorized to act on behalf of the defendant.

In mid-October 1959, Ayrton issued invitations for bids on the second contract. Ryan and Walsh were invited to bid on this contract. Pursuant to the invitation, Ryan submitted its bid for the second contract on October 16, 1959, and was awarded the second contract on the basis of the lowest competitive bid on October 30, 1959. Approximately 425,000 tons of bauxite were discharged by Ryan under this second contract, and plaintiff is seeking five cents per ton commission on this tonnage.

Each party contends that as a matter of law it is entitled to summary judgment.

The contract between the plaintiff and the defendant was a non-exclusive brokerage contract and created the relationship of principal and agent between the parties. Under the agreement, the time for performance by the plaintiff was indefinite.

The legal issue raised here is not unique and has been the subject of numerous court decisions. If the defendant had the legal right to terminate the relationship and did so without endeavoring to avoid the payment of a commission virtually earned by the plaintiff, it is entitled to have its motion granted. On the contrary, if there existed no such right in the defendant, and the plaintiff was terminated solely for the purpose of avoiding the payment of a commission virtually earned, then the plaintiff is entitled to a judgment.

It is stated in 8 Am.Jur., Brokers, Section 41, p. 1008 that:

"According to the weight of authority, a principal who has not contracted to employ the broker for any specified period of time, may terminate the agency at any time before it is consummated, without incurring any liability, provided he acts in good faith and not for the purpose of escaping the payment of commissions virtually earned."

This general statement of law is supported by the law of Alabama. Cronin v. American Securities Co., 1909, 163 Ala. 533, 50 So. 915; Chambers v. Seay, 1882, 73 Ala. 372; Millican v. Haynes, 1925, 212 Ala. 537, 103 So. 564; Chitwood v. White, 1921, 18 Ala.App. 331, 92 So. 84; Gulf Trading Company v. Radcliff, 1927, 216 Ala. 645, 114 So. 308.[2] Under the foregoing authorities the defendant, unless it did so to avoid the payment of commissions virtually earned, had the legal right to revoke the plaintiff's agency.

There were two separate and distinct contracts awarded by Ayrton, each to the lowest competitive bidder. The plaintiff was afforded every opportunity to procure for the defendant the first contract, but was unsuccessful in its efforts. Rather the contract was awarded to the defendant's competitor solely on the basis of the lowest competitive bid. When the defendant failed to obtain this contract it reached the conclusion that the plaintiff's services were valueless to it and would be of no benefit in assisting it to procure the second contract which was yet to be awarded, again on the sole basis of the lowest competitive bid. At the time of plaintiff's termination there was absolutely no assurance or even indication that Ryan would be successful in securing the second contract; indeed, at this time, invitations to bid on the second contract had not even been issued and were not issued for some weeks after plaintiff's termination by the defendant. Consequently, it is the opinion of the court that at the time of the revocation of plaintiff's services, there were no commissions virtually earned by it. Just

2. See also: Baird v. Lewis (1956), 229 Misc. 61, 90 So.2d 184; Wood v. Hutchinson Coal Co. (D.Ct.W.Va., 1949), 85 F. Supp. 1010; aff'd, 4 Cir., 176 F.2d 682; and Ballard v. Tinque Mills, Inc. (D.Ct. Conn., 1954) 128 F.Supp. 683.

as the first contract was awarded to Ryan's competitor on the basis of the lowest competitive bid, so Ryan was awarded the second contract solely because it submitted the lowest competitive bid and not because of any efforts on the part of the plaintiff.

Under these facts, it is the court's opinion that the action of the defendant in terminating the plaintiff to act on its behalf was not taken to avoid the payment of any commission to the plaintiff. I am of the opinion that at the time of termination, there were no commissions earned by the plaintiff. Having so concluded, the defendant's motion for summary judgment will be granted, and the motion of the plaintiff denied. Costs will be taxed against the plaintiff.