# Haas *v.* Taylor.

## *Trover for Conversion of Cotton Seed.*

1. *Plea of former judgment in bar; replication and evidence.*—In trover for the conversion of cotton seed, a former judgment being pleaded in bar, in which a set-off was claimed on account of the value of the cotton seed, it is competent for the plaintiff to show that, on the former trial, under the evidence and the rulings of the court thereon, the claim of set-off was disallowed, because the plaintiff in the action had an unsatisfied lien on the cotton seed; and a replication averring these facts is a good answer to the plea.

2. *Lien of bailee, and liability for negligence.*—The proprietor of a ginnery has a lien on cotton delivered to him to be ginned, for his services in ginning it, and is entitled to retain the possession until his charges are paid, but, if his lien has been discharged, and the property is not forthcoming on demand, the *onus* is on him to prove that it perished, was destroyed, lost or stolen, although he had exercised ordinary diligence in preserving it; and his liability extends equally to the acts of his agent in charge, or of a subsequent lessee of the ginnery.

3. *Demand and conversion.*—When the conversion complained of consists in a failure or refusal to deliver on demand, the demand must have been made after the plaintiff's right to the possession accrued; but, when the conversion consists of an unauthorized disposition, waste, or destruction of the property, no demand is necessary.

APPEAL from the Circuit Court of Montgomery.

Tried before Hon. JNO. P. HUBBARD.

This was an action of trover by Frank G. Taylor against J. C. Haas to recover damages for the alleged conversion of fifty bushels of cotton seed. On the trial, as shown by the record, the defendant pleaded the general issue and a special plea, averring, in substance: that in a former suit between the parties, in which Haas was plaintiff and Taylor defendant, and which was tried and determined at the December Term, 1884, of the Circuit Court of Montgomery county, before the Hon. JAMES E. COBB, the said Taylor, the defendant in that suit, "pleaded several pleas, and amongst them set-off, viz: that said Haas at the beginning of that suit was justly indebted to him, the said Taylor, to the amount of the proceeds of seventy-five bushels of cotton seed, valued at $75.00, which, together with other matters and amounts said Taylor offered by said plea, to set off against the demands of said Haas, in said former suit, and claimed judgment over for the residue. * * And this defendant, the said J. C. Haas, avers that the fifty bushels of cotton seed mentioned and described in the complaint of the said Frank G. Taylor, in the present suit, and for

[Haas v. Taylor.]

the alleged conversion of which he claims damages of the said Haas, in this suit, are a part of the seventy-five bushels of cotton seed, valued at $75.00, as aforesaid, which are mentioned in said plea of set-off, and which said Taylor offered to set off against the demands of said Haas in said former suit." The plea further averred that judgment was rendered in favor of said Haas in said former suit; and, after alleging the identity of the parties in the two suits, that the Circuit Court had jurisdiction, &c., pleaded "said judgment in said former suit in bar to the present action."

It may be stated here that the said Haas was the proprietor of a "steam cotton mill or ginnery" in the city of Montgomery, and that the cotton seed in controversy were of a valuable grade or class, known as "Jower's seed," and reasonably worth $1.00 per bushel, and were the product of certain cotton left with the defendant by the said Taylor, in September, 1883. The plaintiff, specially replying to defendant's plea of *res judicata*, after denying certain allegations in said plea, not necessary to be particularly noted, averred that "just before the matters involved in said former suit, in said Circuit Court, were submitted to the jury for their determination, the Hon. J. E. Cobb, the judge presiding, instructed the said jury, that the said Haas, the plaintiff in said former suit, had a lien on the said seventy-five bushels of cotton seed claimed in said plea of set-off on account of his, the said Haas, having ginned the cotton out of which the said cotton seed came, and Taylor, not having paid the price for ginning the same, he, the said Taylor, plaintiff in this suit, but defendant in that suit, could not set off the value of said cotton seed until he had paid the costs of ginning the cotton out of which said seed came." The replication further alleged that "in the said judgment recovered by the said Haas against the plaintiff in said former suit, the value of said seventy-five bushels of cotton seed included in said plea of set-off, filed by the defendant in that suit, was not included or considered, but the amount claimed by the said Haas of the said Taylor, for ginning the said cotton out of which the said cotton seed came, was included; and the said Haas was thereby enabled to recover of the said Taylor the amount for the ginning of the said cotton out of which the said cotton seed came. And plaintiff in this suit further says, that he paid the judgment recovered by the said Haas of him in said former suit, before making the demand for the said seventy-five bushels of cotton seed." The said Taylor concluded said replication by averring that, after paying the judgment so recovered by said Haas, the latter gave him an order for the seventy-five bushels of cotton seed, directed to the party holding the same for said Haas; but, upon presentation of said order, he failed

[Haas v. Taylor.]

to get more than twenty-five bushels of the seed, and hence brought his action for the remaining fifty bushels. The court overruled a demurrer to the replication and the defendant duly excepted.

As shown by the bill of exceptions, the plaintiff introduced testimony as to the bailment with defendant of the cotton from which the seventy-five bushels of seed were derived ; and to defendant's refusal to deliver the same, upon application therefor, upon the ground that he had a right to retain said seed, under a lien for ginning said cotton, until the price charged by him for such ginning was paid. "The plaintiff offered to prove by a colored witness, Sam Bostwick, that one Weil was the agent of defendant, in charge of said gin or mill, superintending and managing the same. Defendant objected to the introduction of this evidence, but the court overruled defendant's objection, and allowed the witness to testify that said Weil was the agent of defendant; that he had charge of the gin and warehouse connected therewith; that he bought cotton seed; saw to the receipt of cotton to be ginned there, and to the delivery of the same when it had been ginned ; and that he seemed to have general charge and management of the entire business. * * Plaintiff offered to prove by said witness, Bostwick, that in the early part of the year, 1884, on a cold, frosty morning, 'said Weil sold one bushel of said cotton seed to a countryman' for $5.00. It being admitted that defendant was not present at the time, defendant thereupon objected to the evidence, but the court overruled his objection and allowed the witness to so testify, and to this refusal of the court defendant duly excepted." This witness also testified that, some time in the Fall of the year, 1883, the said Weil ordered a hamper basket and two sacks of said seed to be carried to the house of defendant, and that said seed were put on a dray by witness and said dray went up " town," and towards defendant's house; but the witness was " unable to state whether said basket and sacks of seed were ever, in fact, carried to or delivered at said defendant's house. It being admitted that defendant was not present at the time, defendant thereupon objected to the introduction of this evidence, or any part thereof, to the jury ; but the court overruled the defendant's objection, and allowed the witness to testify to said facts, and to this action and ruling of the court defendant duly excepted." The plaintiff, as a witness in his own behalf, testified as to the recovery against him in the suit of *Haas v. Taylor*, and that he had paid the judgment therein; that he received an order from said Haas, directed to Chambers Bros. who occupied and operated the warehouse, where said cotton seed was stored, but he "found only twenty-five bushels, which were so badly rotted

[Haas v. Taylor.]

that he had to throw them in a manure pile;" that shortly thereafter he brought the present suit, first notifying Haas that he had only received from Chambers Bros. 25 bushels, leaving 50 bushels due him.

As further shown by the bill of exceptions, the defendant testified "that he had never authorized said Weil, at any time, while he was in defendant's employment, to sell either cotton or cotton seed at the mill, in the warehouse, or elsewhere;" and denied most of the essential facts testified to by the witness, Bostwick, as to the alleged conversion of the seed in question. Thos. H. Watts, Jr. then testified as a witness for the plaintiff, as to the proceedings in the suit of *Haas v. Taylor;* his testimony, to portions of which exceptions were duly reserved by the defendant, tending to support the allegations of the replication filed by the said Taylor, the defendant in the former suit, and the plaintiff in the present action.

This being substantially all the evidence, the plaintiff requested the following charge which was in writing: "(1.) The defendant, although he had a lien on the cotton seed sued for, was bound to take reasonable care of the cotton seed; and if he sets up as defense that the seed were stolen, or that some one else got them, the burden of proving these facts is on the defendant, and he must prove them to the satisfaction of the jury." To the giving of this charge the defendant excepted, and requested the following, which were in writing: "(1.) If the jury believe all the evidence in this case, they must find for the defendant. (2.) If the jury believe from the evidence that on the 1st day of October, 1883, the cotton seed in controversy were in possession of the defendant, Haas, and that Haas retained possession thereof under a lien for ginning cotton for Taylor, out of which cotton the seed in question were derived; that while said seed were thus held by said Haas, Taylor on said 1st day of October, 1883, demanded said seed of Haas, and that Haas thereupon refused to deliver or surrender said seed to Taylor, upon the ground that he had a lien for ginning against Taylor, which had not been paid off or discharged; and if the jury further find from the evidence that Haas held said lien thereon, which Taylor at that time had not discharged or paid off, then, upon this state of facts, if believed by the jury, the plaintiff is not entitled to recover in this suit. (3.) Unless the jury are satisfied from the evidence that the plaintiff had the possession, or immediate right of possession to the cotton seed in controversy, on the 1st day of October, 1883, then the plaintiff can not recover in this action; and in determining the fact, whether or not plaintiff had the possession, or immediate right of possession to said seed, they must look to the fact that Haas had possession of said seed, holding the same until a lien

[Haas v. Taylor.]

for ginning was paid off, if the jury believe this fact. (4.) If the jury believe from the evidence that on or about October 1st, 1883, Taylor demanded the cotton seed from Haas, and that Haas refused to deliver them upon the ground that Taylor was indebted to him for ginning and held a lien thereon therefor, and declined to deliver the seed until the lien was paid off and discharged, then, upon this state of facts, if believed by the jury, said Haas had a right to refuse to deliver up the seed, and to hold the same until the said lien was discharged, and if the jury believe from the evidence, that said demand and refusal were the only demand and refusal at or before the time of the conversion alleged in the complaint, then the plaintiff is not entitled to recover."

The assignments of error embrace the refusal of the court to give these charges, and the rulings above noted, to which exceptions were reserved by the appellant.

RICE & WILEY, for appellant.

WATTS & SON, contra.

STONE, C. J.—The general rule is, that an issue formed before a court having jurisdiction of the subject-matter and parties, and decided by such court on the merits, is, so long as the decision remains unreversed, a conclusive determination of the controversy or title involved between the parties to the suit, and their privies in blood or estate. And such former determination may be pleaded in bar, or, in many cases, proved on the trial, without special pleading. It is a bar, not alone as to the matters directly presented on the face of the record. It goes further, and determines every inquiry necessarily involved in the issue as formed and decided. And any connected attendant fact, circumstance, or condition which limits, qualifies, or varies the fact in issue, is as effectually determined by it, as is the main fact itself. To come within the rule, however, the issue must be broad enough to embrace the subject, it must have been in fact considered, or so blended with the subject considered as to have become a qualifying part of it, and it must have been decided on the merits. Mr. Freeman, in his work on Judgments, § 256, speaking of what is necessary to constitute the bar, says the essentials are, "1st, that the issue in the second action, upon which the judgment is brought to bear, was a material issue in the first action, necessarily determined by the judgment therein ; 2d, that the former judgment was upon the merits."—See also 2 Smith Lead Cas. (8th ed.) 919, et seq.

The foregoing definition does not bring within the operation

[Haas v. Taylor.]

of the estoppel, matters, not of the essence of the contention, but brought incidentally, or collaterally into it, in the wide range frequently indulged, in the introduction of testimony. Nor, as it is sometimes said, does it include matters which require argument to bring them within the influence of the decision. It is only of those matters which, as premises, enter into and uphold the judgment (the judgment being the conclusion of the syllogism), and *connected, qualifying matters*, which, if produced, would change or impair the legal force and effect of the cause of action itself on which the judgment was rendered, that the judgment pronounced becomes conclusive. There is the further qualification. If there be a disconnected, independent claim, which the law allows to be introduced—a valid cross-demand, for instance—and such claim is brought into the contention, considered, and adjudicated upon its merits, this becomes *res judicata*, and parties and their privies are estopped from re-litigating the validity of such claim.—*S. & N. Ala. R. R. Co. v. Henlein*, 56 Ala. 268.

In making good the defense of *res judicata*, the evidence must necessarily vary with the nature of the issues presented in the first trial. Sometimes the record makes full proof of the subject-matter both of the suit and the defense, as it does of the judgment pronounced. In others, the identity and scope of the contestation do not appear on the face of the papers. When such is the case, other sources of information must be resorted to. If necessary, it is permissible to prove what testimony was given on the former trial, and the rulings of the court, as a means, and the only means of showing precisely what issues and inquiries of fact had been submitted to the trying body. This, with the view, and solely with the view, of determining the identity of the two contentions.

On a second trial, it can never become an inquiry whether the first issue was rightly determined, either in matters of law, or of fact. Whether the issue was within the scope of the pleadings, whether it was the same as that on trial, and whether it was submitted and determined on its merits, are the subject and extent of permissible testimony on the defense of *res judicata*. Perhaps these rules are so well defined that we need not have repeated them.—*Robinson v. Windham*, 9 Por. 397; *Davidson v. Shipman*, 6 Ala. 27; *Chamberlain v. Gaillard*, 26 Ala. 504; *Waring v. Lewis*, 53 Ala. 615; *Perkins v. Moore*, 16 Ala. 9; *Gilbreath v. Jones*, 66 Ala. 129; *McCall v. Jones*, 72 Ala. 369; *Hanchey v. Croskrey*, 1 So. Rep. 259, s. c. 80 Ala; *Rakes v. Pope*, 7 Ala. 161; 1 Greenl. Ev. §§ 528–30, 532.

We do not propose to discuss other features of the doctrine

[Haas v. Taylor.]

of *res judicata*, as they are not pertinent to any material ques-
tion in this cause.

Tested by the rules stated above, the Circuit Court did not
err in admitting testimony of what witnesses had testified to on
the trial of *Haas v. Taylor*, the judgment in which case is
pleaded as *res judicata* to the present action. Neither was
there error in allowing proof of the rulings of the presiding
judge on the former trial, that the set-off of the cotton seed,
pleaded as a defense to that suit, was not a legal cross-demand.
The value of the cotton seed claimed as set-off in that suit, is the
identical cause of action on which the present suit is founded,
and the effect of that ruling was to exclude from the consider-
ation of the jury that item of defense. The ruling was clearly
correct, for at that time Taylor could maintain no action for the
recovery of the cotton seed or their value. Haas had an un-
satisfied lien on them, and could maintain his right to the pos-
session until his lien was satisfied.

The right to the cotton seed or their value, was not deter-
mined on its merits in the former suit, as all the testimony
tends to prove. The replication was sufficient, and the de-
murrer to it was rightly overruled.

Haas having a lien on the cotton seed to secure his proper
charges for the ginning, was authorized to retain the possession
of them until such charge was paid. This the testimony showed
he did. Having such possession, it was his duty to bestow or-
dinary care and diligence in their preservation. The measure
is, such care and diligence as an ordinarily prudent person takes
of his own similar property. And if on demand of the prop-
erty, the lien being discharged, it is not forth-coming, the bur-
den is on the possessor, or lienee, to show that it perished, was
destroyed, was lost, or stolen, notwithstanding he had employed
ordinary diligence in preserving it. He is not relieved of im-
puted fault, until he shows the exercise of this measure of dili-
gence, unless the loss or destruction is shown to have occurred
under circumstances which ordinary diligence could not have
foreseen nor prevented.—Jones on Pledges, §§ 403, *et seq*.

There was proof that the ginnery or mill, while owned and
operated by Haas, was nevertheless in the care and control of
Weil, his agent. And there was testimony that while so in
possession, Weil sold one hundred bushels of seed, and sent off
another portion. This testimony was objected to by Haas, the
defendant. There was nothing in this objection. Haas, as we
have seen, was bound to use ordinary diligence in taking care
of the cotton seed, and fastened a liability on himself for any
damages done to Taylor for his failure to bestow it. And Weil,
being in possession and control as his agent, he was equally re-
sponsible for his negligence and unauthorized disposition of the

30

[Haas v. Taylor.]

seed, as if he, Haas, had himself perpetrated the wrong. It was a breach of his duty to safely keep, and to use ordinary diligence in preserving the cotton seed, for Taylor's use. So, it is immaterial where the cotton seed went, when sent off by Weil. It was, a breach of duty which, under the law, rested on Haas, for which the latter is reponsible.

And this duty to preserve the cotton seed continued and would continue, until Haas disposed of them properly in discharge of his lien, or restored them to Taylor. Hence, when the possession of the mill or ginnery passed from him to Chambers Bros., the duty did not cease. He should have employed proper diligence for their continued preservation, the same as an ordinarily prudent man would bestow for the safe keeping of his own property of like kind.

It is very true that when the conversion complained of consists in a failure or refusal to deliver on demand, such demand to be effective, must be made after the plaintiff's right to the posssession has accrued. The conversion complained of in this case is different. Unauthorized disposition, waste, or destruction of the property, or a part of it, is what the testimony tends to prove. When such is the case, no demand is necessary. *Glaze v. McMillan*, 7 Por. 279 ; *Brown v. Beason*, 24 Ala. 466 ; *Kyle v. Gray*, 11 Ala. 233 ; 6 Wait Ac. & Def. 165.

The tendency of the testimony, if believed, was to show that part of the cotton seed were sold, or otherwise disposed of by Weil, the agent in charge. The proof does not explain what became of the other missing seed. Possibly they were lost through the carelessness, or inattention of the persons in charge. If so, it might become a question whether trover would lie for the seed thus lost. We refer to this phase of the case, for the sole purpose of preventing a misinterpretation of our ruling. As we have shown, there was testimony tending to prove a conversion of a part of the seed ; and if there was other part for which, according to strict rules, trover would not lie, that presented a question, not of right, but of the measure of recovery. This could only be raised by a proper charge, and the record fails to show that any such charge was asked or given. The question is not raised, and we intimate no opinion on it.

The Circuit Court did not err in the charges given, nor in the refusal of the charges asked.

Affirmed.