## RIDGELY OPERATING CO. v. WHITE.

6 Div. 304.

Supreme Court of Alabama.

June 22, 1933.

Rehearing Denied Nov. 2, 1933.

460

Bradley, Baldwin, All & White, of Birmingham, for appellant.

FOSTER, Justice.

This suit was tried on counts 1 and 3. They allege that defendant was operating the "Ridgely" as an apartment house or hotel, whereby it maintained dominion and control over the hallways, elevators, stairways, entrances, etc. In count 1 it is alleged that plaintiff delivered to defendant her trunk "for the purpose of having the same placed in plaintiff's apartment in said Ridgely, to-wit, rooms 705–6 on the seventh floor of said apartment." In count 3 it is alleged that plaintiff delivered her trunk to said apartment house or hotel, and into the hallway, but does not otherwise allege its delivery to or possession by defendant. In both counts it is charged that "defendant negligently caused or allowed said personal property to be stolen, removed or misplaced," etc. In neither count does it allege in what manner she claimed the apartment, or that she agreed to pay any consideration for its use or occupancy.

Harsh, Harsh & Hare, of Birmingham, for appellee.

The duties of a gratuitous bailee impose upon him a liability for gross negligence or bad faith. Prince v. Ala. State Fair, 106 Ala. 340, 17 So. 449, 28 L. R. A. 716; Bain v. Culbert, 209 Ala. 312, 96 So. 228; Thomas v. Hackney, 192 Ala. 27, 68 So. 296; Haynie v. Waring, 29 Ala. 263.

Ordinarily the word "gross," when applied to negligence, imports nothing more than simple negligence, or a want of due care. Stringer v. A. M. R. R. Co., 99 Ala. 397, 410, 13 So. 75; Ex parte Priester, 212 Ala. 271, 102 So. 376; 45 Corpus Juris, 671. But the authorities cited above show that a greater duty is imposed upon a bailee for hire than upon one whose relation is gratuitous.

When the complaint alleges facts which warrant a recovery only for gross negligence, a charge in it that the conduct of defendant was "negligent" without the use of the word "gross," or its equivalent, is generally said to be sufficient, and gross negligence may then be proven. 45 Corpus Juris, 1090. This is upon the theory that, after all, negligence is but the want of due care; that is such care as is required by law under the circumstances. If more than ordinary care is required, its breach is therefore properly termed negligence, and may be thus expressed in the complaint. But to justify any degree of care, whose breach would be negligence, the complaint must show facts upon which some legal duty exists. American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507.

We think that count 3 of the complaint does not sufficiently allege the facts to show the alleged duty to plaintiff by defendant. It shows that "she delivered to said apartment house or hotel" and into its hallway her trunk for the purpose of having it placed in her apartment. It does not allege that she acquired the right to say that the apart-

ment was "hers" on account of any contract with defendant, whereby any duty was imposed upon it, or other circumstances showing such duty.

But the omissions of count 3 were supplied by the uncontradicted proof and the charge of the court. Any error in that connection was thereby cured. Life & Casualty Co. v. Peacock, 220 Ala. 104, 124 So. 229; Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665; S. C. Rule 45.

Count 1 alleges a delivery to defendant of such property for the same purpose. This ordinarily implies its actual or implied acceptance by defendant. Such, we think, should be its meaning, as thus stated in count 1. So that count means that plaintiff was moving a trunk to her apartment in the house operated by defendant, and delivered the trunk to defendant for that purpose. She could not prove that allegation without showing that defendant either expressly or impliedly accepted the delivery for that purpose. Since no consideration is alleged or properly inferable from the facts alleged, there was a duty, at least to use such care as the law exacts of a gratuitous bailee, and a failure on his part, without excuse, to perform such duty, is negligence, as charged in count 1 of the complaint. We think, therefore, that count 1 was not subject to the demurrer.

The right to recover is dependent upon a consideration of certain legal principles argued very carefully by counsel for appellant.

It is undoubtedly true that a bailee must have possession of the property. Ex parte Mobile L. & R. Co., 211 Ala. 525, 101 So. 177, 34 A. L. R. 921. But such possession may be constructive, growing out of the relation of the parties. 6 Corpus Juris, 1103, 1104, note 51; 32 Corpus Juris, 557. It is also true that, to require the duty of ordinary care upon a bailee, there must be some sort of consideration. But if the bailment was at the instance, or on the invitation, of defendant because of benefits, direct or contingent, which were expected to accrue, or on a contract express or implied, having a legal consideration, it was not gratuitous. Prince v. Ala. State Fair, 106 Ala. 340, 17 So. 449, 28 L. R. A. 716; Birmingham Terminal Co. v. Thomas, 207 Ala. 363, 92 So. 803; 6 Corpus Juris, 1130.

Though not alleged in the complaint, the evidence showed that plaintiff rented the apartment and agreed to pay rent, and by virtue of such agreement she was moving her effects into the apartment. So that there was such consideration shown as to require the use of ordinary care, if the other incidents of a bailment existed.

The duty of the landlord of a large modern apartment house to the various tenants seems not to have heretofore been the basis of judicial decision.

That of an innkeeper to guests is an insurer of his personal effects; that of a boarding house keeper and restaurant keeper to customers is the use of ordinary diligence and care. Chamberlain v. Masterson, 26 Ala. 371; Lanier v. Youngblood, 73 Ala. 587; Blaufarb v. Drooker, 251 Mass. 201, 146 N. E. 242, 39 A. L. R. 291; Roman v. King, 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263. In each instance the keeper has control over the entire building, including the interior of the rooms of guests and boarders.

The facts in respect to this defendant and its relation to the plaintiff are shown only by plaintiff's evidence, and are without dispute as follows: Appellee acting by a friend, Mrs. Meeds, first made a verbal agreement to rent an apartment in the Ridgely, but she later signed a written contract. This written contract is not here controlling, since it did not express their relations at the time when plaintiff claims that her cause of action accrued. The Ridgely was shown to be a large apartment house, at least seven stories, and was used to accommodate transients for a night or more, and for apartment tenants for longer terms, equipped in all respects as separate unit residences. Apartment tenants, such as plaintiff, provided their own furniture and equipment for housekeeping. The halls, lobby, porches, stairways, entrances, and elevators were under the management and control of the defendant. A café was maintained by defendant for guests, tenants, and the public. The apartment rented by plaintiff was on the seventh floor, and the door to it was near the entrance to the freight elevator, by which her furniture and effects were transported to the seventh floor, and was also near to a stairway, and adjoined a corridor from which another corridor extended. The friend, Mrs. Meeds, had rented and occupied an adjoining apartment, and they had arranged to combine their holdings and occupy them as one family, each paying her own rent. As plaintiff was having her effects transported, she remained at her former residence, and Mrs. Meeds was at her new place to receive the effects and help arrange them.

The trunk came with the first truck load of effects, and all were transported by the freight elevator to the seventh floor, and left in the hall in front of the apartment rented by plaintiff. The men doing the hauling then left all of them in the hall, and went for the second truck load. The friend (Mrs. Meeds) was in and out of the apartment, and arranging them in it, and a strange negro man not connected with the work in any manner, nor with defendant, helped Mrs. Meeds move the goods in the apartment— all of them, except the trunk which was left

in the hall. It was said to be too heavy, weighing two hundred to three hundred pounds. She says she never saw the trunk again after this man left and never saw him again. When they returned with the second load, the trunk was gone, and has not been located, nor has any one definitely identified it as having been seen since. It contained much silverware, and clothing, and was very heavy. Mrs. Meeds did not hear anything being moved about in the hall, or out of it, and there were no marks showing that it was dragged on the floor. The boy operating the freight elevator was a regular employee on that job, and was not examined as a witness. Many negroes were employed by tenants of the apartment house and used the freight elevator.

The defendant in operating the house had a lady always on hand in the office to look after the building and wants of the tenants and guests of the house.

There was evidence that on a nearby street on that afternoon a negro was seen with hand trucks of the type used in hotels to transport trunks in halls, on which he was carrying a large trunk of the same general description as that lost by plaintiff. It was not otherwise identified, and it was not shown what became of it, nor that he was the one helping Mrs. Meeds.

■ Do those facts show that the defendant in the operation of the apartment house was in the constructive possession of the goods of plaintiff as a tenant while they were in the hall temporarily and necessarily before they could be placed into the rooms? We think that such is the legal effect of those circumstances if they are not then under the immediate observation of the tenant or her agent. We think that under such circumstances the owner should be expected to anticipate that they must so remain for a time, when they all cannot be under the observation of the owner, and that he is expected to, and should exercise ordinary care for their safety against theft whether by his own employees or others. The corridors and other such places are under the same nature of supervision by the apartment owner as the rooms and other places of a boarding house, and entail the same nature of duty upon one operating it. This duty should not follow the goods into the rooms of the apartment tenant. They are then not in a place over which he has control. Chamberlain v. Masterson, supra.

■ When goods are lost out of the possession of a bailee, negligence is prima facie imputed to him, and he has the burden of showing that the loss was not due to his want of due care or that of his servants or agents in the line of their employment and duty. Central of Georgia Ry. Co. v. Jones, 150 Ala. 379, 43 So. 575, 9 L. R. A. (N. S.)

1240, 124 Am. St. Rep. 71; Hackney v. Perry, 152 Ala. 626, 44 So. 1029; Southern Garage Co. v. Brown, 187 Ala. 484, 65 So. 400; Higman v. Camody, 112 Ala. 267, 20 So. 480, 57 Am. St. Rep. 33; Haas v. Taylor, 80 Ala. 459, 2 So. 633.

And this rule also applies to gratuitous bailees. Thomas v. Hackney, 192 Ala. 27, 68 So. 296.

■ Since the burden was cast on defendant by the undisputed evidence to acquit itself of negligence, and no effort was made to do so, the affirmative charge on both counts was properly refused to defendant.

■ Other assignments of error relate to the refusal of requested charges. Some of them state correct legal principles, but ordinarily it is not error to refuse a charge which merely asserts a correct legal principle without direction to the jury as to its effect. Johnson v. Louisville & Nashville R. R. Co., 220 Ala. 649, 127 So. 216.

We do not think that the refusal of any of such charges was prejudicial to appellant. We do not find reversible error and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

## On Rehearing.

FOSTER, Justice.

It is well understood that the general rule is that, to constitute a bailment, there must be an acceptance of possession of the property, which implies knowledge by the bailee that he takes and assumes possession, and his dominion must ordinarily be exclusive. But that principle is consistent with the further rule of law by which, when a certain relation is voluntarily assumed, acceptance of the possession of certain property may be construed to exist, though there is no actual knowledge of the items of such property. This is illustrated by the principle which holds an innkeeper to the relation of a bailee of certain goods of his guest, though he knows nothing of the existence of such property in fact, and his "duties must be measured by the analogies of the law applicable to other species of bailments." Chamberlain v. Masterson, 26 Ala. 371.

There are different degrees of duty by a bailee. An innkeeper, and a boarding house keeper, or warehouseman, are not subject by common law to the same amount of care. But the difference is in the degree of care, and not in the principles of law which are controlling in determining whether there is a bailment.

It is said not to be necessary that the property of the guest be placed in the special keeping of the innkeeper, or that he be giv-

en exclusive possession or complete dominion over it. For, unless the guest assumes the exclusive control and dominion of the property, it is deemed to be within the custody of the innkeeper so as to render him responsible therefor when it is in the room of the guest or some place about the premises under the control of the manager. 32 Corpus Juris, 557.

When truly analyzed, we think this case hinges upon whether the plaintiff did or did not have, at the time of the loss, exclusive control and dominion of the trunk. We stated the facts bearing on that inquiry in our opinion in this case, and held, in substance, that, since the elevator and hallway were under the dominion of the defendant, and that it should be contemplated that in moving into an apartment by a tenant, it would be necessary to transport his goods to the proper floor by the elevator operated by defendant and leave them or some of them temporarily in the hall, not under the observation of the owner, the defendant owed a duty of ordinary care to see that its servants or others did not dispose of, destroy, or injure them. We cannot recede from that position and cannot agree with counsel that, if the owner or her agent is in the apartment, not observing the trunk in the hall, it must be regarded as still under her exclusive control in the sense of this rule.

 The lease contains a clause to the effect that the personal property of the tenant placed in the leased premises or appurtenances thereto are at the risk of such tenant, without liability of the lessor for any act of negligence of any person in or about the building. This lease was dated November 25th, and the undisputed evidence is that plaintiff moved into the apartment on November 28th, and on that day lost her trunk, but that she did not sign the lease until several days after she moved in. Plaintiff did testify that the lease was the only agreement she had with defendant, but in the same connection said that, before going into the apartment, Mr. or Mrs. Meeds went down for her and made arrangements for her to occupy it, including the amount to be paid. She was not present when this arrangement was made, and its details are not shown, other than that the amount to be paid was agreed on. She says she knew nothing of any lease, nor that one was contemplated, until after she moved in the house and lost her trunk. There is no evidence that there was any understanding up to that time that the lessor should be freed from such liability, or that such a clause would be in a lease to be executed later. When the lease was executed, the cause of action had accrued. So that the question is, What effect did such clause have upon a cause of action which had then accrued?

We do not differ with the principle asserted in the cases cited by appellant's counsel that, if such had been the verbal contract when she lost her trunk, the subsequent execution of a lease such as they then contemplated was in the nature of a confirmation of the verbal contract. But when there was no verbal contract to that effect, there was nothing in that respect to confirm, and the writing amounted to one to that extent only from the date of its execution. Its reference to a date anterior to the loss therefore could affect such loss only if it may be classed as a release of the cause of action. But there was no consideration for such release. Of course the mutual obligations of the contract were sufficient consideration in so far as concerned transactions thereafter accruing, but not as a release of an existing cause of action, even though it be held to have that meaning and intent, unless based upon some modification of the prior verbal agreement. Abercrombie v. Goode, 187 Ala. 310, 65 So. 816.

We think that we correctly disposed of this question in our original opinion, but, that there may be no misunderstanding, we pretermit altogether a consideration of the effect of an agreement by a bailee to relieve himself of the consequences of his negligence. See 6 Corpus Juris, 1112; Moeran v. New York Poultry, etc., Ass'n, 28 Misc. 537, 59 N. Y. S. 584; 10 Corpus Juris, 133, 134; 32 Corpus Juris, 551 (48); 40 Cyc. 437; Cent. of Ga. R. Co. v. Merrill & Co., 153 Ala. 277, 45 So. 628; Thompson v. Mobile L. & R. Co., 211 Ala. 525 (6), 101 So. 177, 34 A. L. R. 921; Moore v. Mayor, etc., of City of Mobile, 1 Stew. 284.

We have discussed the two questions argued on this application, and see no reason to modify our former opinion.

Application overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.