103 So.2d 30

## A. KAHALLEY

v.

## Alfred L. STAPLES et al., d/b/a Staples-Pake-Griffin.

### 1 Div. 700.

Court of Appeals of Alabama.

Feb. 26, 1957.

Rehearing Denied March 26, 1957.

J. B. Blackburn, Bay Minette, for appellant.

**62**

Chason & Stone, Bay Minette, for appellees.

PRICE, Judge.

This is an action by appellees against the appellant to recover a real estate broker's commission.

The complaint consisted of two counts. The first is the common count for work and labor done, and the second is as follows:

"The Plaintiffs claim of the Defendant the sum of Two Thousand Dollars ($2,-000), due from the Defendant as damages for the breach of a contract by the Defendant entered into by and between the Plaintiffs, licensed real estate brokers of the State of Alabama, and the Defendant, on, to wit; April 5, 1954, under the terms of which the Defendant promised to pay to the Plaintiffs a real estate commission of ten per cent. (10%) in consideration of the promise of the Plaintiffs to use their best efforts in securing a purchaser for the property owned by the Defendant located in Bay Minette, Baldwin County, Alabama, and known as A. Kahalley's Department Store, at 112 Hand Avenue in said City, if the said property was sold during the period of thirty days from the date of this contract upon any terms acceptable to the said Defendant. And the Plaintiffs further allege that in furtherance of their contract with said Defendant they, as such real estate brokers, diligently listed said property and advertised the same and made several trips to Bay Minette, Alabama, and several telephone calls to the said Defendant in an effort to consummate a sale of said property and that they did use their best efforts to secure a purchaser for the same for the said Defendant and in consequence of the efforts of the Plaintiffs, or their agents, servants or employees, aforesaid, the Defendant did sell said property to Charles Strong upon terms acceptable to the said Defendant and did accept the benefit of the Plaintiffs' efforts notwithstanding the fact that the day which the sale by the Defendant to the said Charles Strong was consummated was after the expiration of the time fixed in the contract entered into by and between the Plaintiffs and the Defendant, wherefore Plaintiffs bring this suit and ask judgment in the above amount."

The court overruled demurrer to count 2 as amended. Defendant filed pleas of the general issue and special pleas setting

up the contract and alleging that the plaintiff had not fully performed the services as required under the terms of the contract and within the time specified therein.

Demurrer was sustained to said special pleas.

Trial resulted in a verdict for the plaintiff for $900, without specifying under which count the verdict was rendered. Defendant prosecutes this appeal.

The evidence is undisputed that on April 5, 1954, the defendant entered into a written agreement with the real estate brokerage firm of Staples-Pake-Griffin, of Mobile, Alabama, which agreement, having been introduced in evidence by the defendant, stipulates that:

"In consideration of your promise to use your best efforts to secure a purchaser, I (we) appoint you exclusive agent to make sale of the property owned by A. Kahalley and located in Bay Minette, Ala. P. O. Box 276 and known as A. Kahalley's Department Store, at 112 Hand Avenue, at the price of Thirty Thousand Dollars ($30,-000) cash upon the following terms:

"I (we) agree to pay you a cash commission of 10% of the price obtained if the said property is sold during the term of this contract by you or anyone else, upon the terms named, or upon any other terms that I (we) shall accept. This contract shall continue for 30 days from date hereof. * * *."

For the plaintiff Irving Gandler testified that he was a licensed real estate salesman employed by plaintiff; that he had a telephone conversation with defendant to find out if he was interested in selling his store and business and later went to Bay Minette to see him; that on April 5, 1954, defendant signed the sales authority to plaintiff which is set out above; that witness advertised the property in a Mobile newspaper and Mr. Charles Strong called him in response to such advertisement and later he and Mr. Strong met with Mr. and Mrs. Kahalley at Bay Minette and looked at the stock of goods and fixtures; that the selling price of $30,000 was discussed, that he was in Bay Minette about two hours at that time; that he later received a copy of a letter from defendant to Charles Strong dated April 15, 1954. A copy of this letter was introduced in evidence. In the letter defendant offered to sell the stock and fixtures for $26,000 cash; that he called Mr. Strong, at Citronelle, by telephone on April 14, 1954, and again on April 20, 1954; in both of these conversations the sale and purchase of the Kahalley store was discussed; later, towards the last of April, Mrs. Kahalley and her daughter came to plaintiff's office in Mobile and talked with him. On cross examination the witness stated that he also called Mr. Strong on April 24, 1954, and after the thirty day period on June 14, 1954; that at no time during the 30 days after April 5, 1954, did he or his firm sell the business of Mr. A. Kahalley to Mr. Strong; that Mr. A. Kahalley interfered with his efforts to sell by dealing direct with his client; that in conversation with the Kahalleys and Strong at Bay Minette something was said about the price of $30,000 being too high; that the Kahalleys suggested to witness that a letter be written to Strong, but this did not meet with witness' approval and he told them not to write the letter; but that a copy of the letter was furnished to him upon request; at no time within thirty days after April 5, 1954, did he or any member of the firm which employed him, produce Mr. Strong or anyone else, who was ready, able and willing to buy the business at the price set out in the contract; that Mr. Kahalley did not sell the business within the thirty day period of time; that he did not say that Mr. Kahalley hindered or obstructed him in selling the property and that he cooperated to a degree; that shortly before the contract expired Mrs. Kahalley and her daughter, Miss Marguerite Kahalley, went to witness' place of business in Mobile and discussed the matter; that he indicated he would try to get an offer from Mr. Strong and then he had one more telephone

conversation with Mr. Strong during the thirty day period; that he suggested a price to make as a counter offer to the letter received by Strong and asked his permission to draw up a firm offer to buy to submit to Mr. Kahalley; that Strong said he would consider it at a lower price; that he did not send Mr. Strong a form after the telephone conversation and within the thirty day period the contract was in force.

A. M. Moragues testified, over the objection of defendant, that the customary and standard commission of 10% of $18,-000, the price for which the property was sold, would be a reasonable fee for the services rendered by plaintiff.

It was admitted by defendant that he executed the "Sales authority," introduced in evidence; that Mr. Strong was introduced to him as a prospective purchaser through the efforts of plaintiffs and that he did not know Mr. Strong previously; that the property was not sold by himself or plaintiff's agent, Gandler, during the time the contract was in force; that he sold the stock of goods for $15,000 and the fixtures for $3,000 to Charles Strong on June 6, 1954.

Mrs. A. Kahalley testified that in the conversation at the store on April 14, 1954, the property was first offered to Mr. Strong for $30,000, but Mr. Strong said the price was too high and the price was reduced to $26,000.

Charles Strong testified that he called plaintiffs as the result of an advertisement in a newspaper and later met with Mr. Gandler and the Kahalleys at the store in Bay Minette; that Mr. Gandler told him at the time the price would be $30,000; that he looked the place over but didn't attempt to take an inventory and told Mr. Kahalley that was more money than he could put into it, but if he would take less to write him the lowest figure; that Mr. Gandler was present at that conversation; that he later received a letter from Mr. Kahalley dated April 15, 1954; that he still thought the price was too high; that about two weeks later Mr. Gandler telephoned him and said that the Kahalleys had been in his office the day before; that Mr. Gandler suggested that he make an offer of $22,500, which he thought defendant would accept; that Mr. Gandler said he would mail him a form on which to submit such an offer, but that he never received the form from Gandler; that as the result of a telephone conversation with defendant's daughter he went to defendant's place of business about May 22nd or 23rd and discussed the price further; that on June 5th he came back and took an inventory and the deal was closed on June 6th; that Mr. Gandler was not present on either of these occasions; that he did not tell Mr. Gandler or Mr. Kahalley or anyone else that he was ready, able and willing to purchase the property during the 30 day period immediately following April 5, 1954, at the price of $30,000 or any other price satisfactory to Mr. Kahalley; that Mr. Kahalley did not interfere in any way in Mr. Gandler's efforts to sell the property.

Miss Marguerite Kahalley, a witness for defendant, testified she was the daughter of appellant and was familiar with this transaction and the facts surrounding it; that she called Mr. Strong for her father on May 13, 1954, to ascertain whether he was still interested in buying the store; that about a week later, on May 22nd, Mr. Strong came to Bay Minette; that they talked about the price of the stock and Mr. Strong said he would like to take an inventory; that he came back on June 6th and took a quick inventory and the business was sold to him on June 7, 1954, for $15,000 for the stock and $3,000 for the fixtures.

The appellant's contention is that Count Two, as last amended, is for a breach of contract and that it does not set out the contract nor allege its legal effect; that it was demurrable because it does not allege that appellee complied with the terms of the contract and does not allege facts showing defendant's obligation under the contract. Moundville Lumber Co. v. Warren, 203 Ala. 488, 83 So. 479; Sloss-Sheffield

Steel & Iron Co. v. Payne, 192 Ala. 69, 68 So. 359; Bailey v. Woodall, 251 Ala. 574, 39 So.2d 16.

Appellee insists that said Count Two is not a declaration on the brokerage contract requiring the broker to set out the contract or state its legal effect, but that it declares for work and labor done under a contract to procure a purchaser for the sale of property and that, inasmuch as defendant had accepted the benefits of its efforts, it was entitled to recover on quantum meruit for such work and labor done.

■ If there was any error in overruling the demurrer, such error was rendered harmless to the defendant by undisputed proof of the alleged omitted averments. Tennessee Valley Sand & Gravel Co. v. Pilling, 35 Ala.App. 237, 47 So.2d 236; Smith v. Tripp, 246 Ala. 421, 20 So. 2d 870; Britling Cafeteria Co. v. Irwin, 229 Ala. 687, 159 So. 228; Birmingham Water Works Co. v. Barksdale, 227 Ala. 354, 150 So. 139; Ridgely Operating Co. v. White, 227 Ala. 459, 150 So. 693; Fagan Peci Co. v. Harrison Co., 16 Ala.App. 470, 79 So. 144.

In Hartsell v. Turner, 196 Ala. 299, 71 So. 658, the rule applicable to such actions was stated: "But while no claim can be founded upon an express contract which has not been fully performed, nor will the mere fact that part performance has been beneficial be considered as sufficient to charge the party benefited on a quantum meruit, still, if the party who has a right to insist on the full performance of such a contract has voluntarily accepted the benefit of partial performance, the modern doctrine, based upon principles of equity and right, holds him liable to pay for the advantage he has thus voluntarily accepted. Liability in such case is rested, not upon the original contract, but upon an implied agreement deducible from the delivery and acceptance of a valuable service or thing." And in Smith v. State, 162 Ala. 433, 50 So. 381, 383, the court said: "While the original contract may be introduced in evidence, and would furnish a basis for the ascertainment of reasonable compensation, yet the suit is essentially upon the new or modified contract, and not upon the sealed instrument."

We are of the opinion that we need state no definite conclusion as to the technical construction to be placed on said Count Two, as amended, because it is our view that under the facts adduced on the trial the plaintiff could not recover either for a breach of the contract or on a quantum meruit for a broker's commission.

■■ The law is well settled that, "in order to maintain indebitatus assumpsit on the contract, the party suing must have performed all of the stipulations of the contract on his part, leaving nothing for the other party to do but to pay the money." Smith v. Sharpe, 162 Ala. 433, 50 So. 381, 382; Terry Realty Co. v. Martin, 220 Ala. 282, 124 So. 901. The evidence fails to show full performance of the contract by plaintiff, and the affirmative charge should have been given as to Count One of the complaint.

In Gulf Trading Co. v. Radcliff, 216 Ala. 645, 114 So. 308, 314, the court said:

"When a limit of time is fixed by contract, the general rule is the broker must fully perform the required service within the time, else no right to commission accrues. This service involves finding and producing a buyer willing, able, and ready to purchase upon terms prescribed, and, if not prescribed, such as are satisfactory to the owner. He must be the efficient, not necessarily the sole, agent in bringing together the minds of the parties, and bringing them into such communication with each other that they may close the deal without further duty or activity on the part of the agent. * * *

"The time limit, like other terms of the agency contract, may be waived or extended. * * * If the owner continues the negotiations with a customer known to have been enlisted by the agent

whose services constitute the efficient cause of the offer to purchase, and the owner, thus appropriating the services of the agent, closes on terms substantially equal to those offered through the agent, commissions are due."

The court, after observing that plaintiff's given charge 7 was erroneous because it did not require that the services of the agent be the efficient cause of the sale and for declaring the owner liable to commission for selling to a known client of his agent at any price after the expiration of the time limit, said further: "If he has in no way hindered or obstructed a sale, the time limit has expired without his fault, and he, in good faith, finds he can sell only at a reduced price and accepts it, he is not liable for commissions."

"In cases where the owner sells to his agent's client pending the agency, and in cases of any fraudulent device to evade commissions, and still reap the fruit of his labors, the fact that the owner does sell to such client is sufficient evidence that he was ready, able and willing to purchase." Culver v. A. A. Gambill Realty Co., 214 Ala. 84, 107 So. 914; De Briere v. Yeend Bros. Realty Co., 204 Ala. 647, 86 So. 528; Handley v. Shaffer, 177 Ala. 636, 59 So. 286.

"But a sale by the owner after the expiration of the time limit is not subject to this rule. Because a purchaser was ready to purchase at a later date does not prove he was ready during the pendency of the agency. In such case, the plaintiff must show his services were the efficient cause of the purchase."

The evidence is undisputed that the property was not sold by the plaintiff nor by the owner during the period of the authorization held by plaintiff. The evidence is also undisputed that the owner did not interfere or meddle to prevent a sale within the time limit. In fact, counsel for appellee states in brief:

"At only one point in the trial did there ever arise any matter of direct conflict between the witnesses and that was when the witness for the Appellees (Gandler) on cross-examination responded to a question that the Appellant had interfered with his efforts to procure a purchaser and this statement was later retracted in the same examination. We want to make it clear to the Court that we do *not* submit that we were hindered by the Appellant and that we do *not* make any insistence that this appeal falls within that line of cases where a commission is held to be payable on account of such action by the owner. We did not plead it—we think it did not, in fact, occur."

We have set out the evidence in extenso to illustrate our view that under the holding of the Supreme Court in Gulf Trading Co. v. Radcliff, supra, that the plaintiff failed to meet the burden cast upon him of proving that the sale of the property to Mr. Strong followed in consequence of plaintiffs' efforts, and defendant was entitled to the affirmative charge under Count Two as amended.

Reversed and remanded.