164 N.J. Super. 9 (1978)
395 A.2d 540
FLORENCE TRENTACOST, PLAINTIFF-RESPONDENT,
v.
DR. NATHAN T. BRUSSEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1978.
Decided November 22, 1978.
*11 Before Judges LYNCH, CRANE and HORN.
Mr. Isaac Henkoff argued the cause for appellant (Messrs. Klein, Chester, Greenburg & Henkoff, attorneys).
*12 Mr. Gregory J. Aprile argued the cause for respondent (Mr. Philip M. Saginario, attorney and on the brief).
The opinion of the court was delivered by HORN, J.A.D.
At about 4 P.M. on December 21, 1973 plaintiff was "mugged" in a hallway of the apartment house in which she resided as a tenant. As a result she sustained serious personal injury. She instituted an action against defendant, her landlord, for her personal injuries, grounded in his alleged negligence in "his failure to maintain the safety of the common areas of access and egress to [the] building, by negligently and carelessly failing to place a lock on the front door entrance," and in certain other respects.
Defendant answered by denying that he was negligent and asserting that plaintiff was contributorily negligent. Following a trial the jury awarded plaintiff $3,000 as damages. The judge then denied a directed verdict which had been sought by defendant during the course of the trial and as to which the judge reserved decision.
Subsequently, plaintiff moved for an additur or, alternatively, for a new trial as to damages. At the same time defendant moved for judgment n.o.v. The judge denied defendant's motion and granted plaintiff's motion by awarding an additur in the sum of $15,000, thereby increasing the judgment to $18,000, the order as to which providing that if defendant failed to consent to the additur a new trial as to damages only would be granted to plaintiff. Defendant refused to agree. The new trial resulted in a verdict at the hands of a jury in the sum of $25,000. Defendant then appealed.
The alleged errors on which defendant relies in this appeal all relate to the first trial. We consider them as they appear in defendant's brief.

*13 I
Defendant first asserts that the trial judge mistakenly denied his motion for a directed verdict as a matter of law. Underlying this contention is defendant's thesis that he was under no duty to provide a lock for the front door and that the criminal attack which resulted in plaintiff's injuries was not shown to be the proximate cause of negligence on his part. We are not persuaded by his argument that the court did err.
No case in our State has heretofore directly addressed the specific issue raised here  the right of recovery for personal injuries of a tenant under the circumstances demonstrated. Several cases touching the fringes of the issue have been decided. Consequently, we refer to these in order to glean therefrom the applicable judicial policy.
The first of these cases is Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962). There, while plaintiff was delivering milk to tenants in a large apartment complex housing between 5,300 and 6,000 residents, operated by the Housing Authority of Newark, he was beaten and robbed by two men in a self-service passenger elevator in one of the ten large apartment houses. Plaintiff prevailed before the trial court and the Appellate Division upon the sole claim that defendant had a duty to provide police protection. In reversing the judgment for plaintiff our Supreme Court determined that defendant Authority did not have the duty to furnish police protection; that the government was responsible for providing such protection. A careful review of Goldberg evidences that the issue involved and discussed related only to that issue  duty of the landlord to provide police protection for the benefit of its tenants  and not its duty as to furnishing locks or other means of controlling ingress to the interior of the buildings. It is noteworthy that, in distinguishing the duty of the landlord in that case from duties of landlords generally insofar as tenant protection is concerned, it referred to McCappin v. Park Capitol Corp., 42 *14 N.J. Super. 169 (App. Div. 1956), annotated in 58 A.L.R.2d 1289 (1958). We discuss this case infra.
The second of these cases is Braitman v. Overlook Terrace Corp., 68 N.J. 368 (1975). The court there upheld the liability of the landlord to a tenant for loss occasioned by theft because of the landlord's negligence in failing to repair the defective deadlock on the door of the tenant's apartment notwithstanding the receipt of notice of the defective condition by the landlord. The court held that Goldberg was not controlling by reason of the narrow issue in that case and the differences in the facts. It concluded that
A residential tenant can recover damages from his landlord upon proper proof that the latter unreasonably enhanced the risk of loss due to theft by failing to supply adequate locks to safeguard the tenant's premises after suitable notice of the defect. [at 383]
Contrary to the attempt of defendant to distinguish Braitman because of the statutory duty, N.J.S.A. 55:13A-7, of the landlord to supply appropriate locks, Braitman alluded to the statutory duty only as an "additional source" of the landlord's liability. The keynote of the decision in Braitman was simply that liability of the landlord was properly posited upon familiar negligence concepts. In other words, as held in Goldberg, supra, as yet[1] there is no duty, as such, on the part of landlords without more to protect tenants from the crimes of third persons. Whether there is a duty in a given case depends upon whether there is a basis in terms of negligence concepts to raise such duty. It follows, then, that the fact that the injury is caused by criminal conduct in and by itself does not make the landlord liable. It is also true that the fact that the injury was caused by criminal acts does not insulate a landlord from liability.
Thus, the court in Braitman (68 N.J. at 381) agreed with the Appellate Division's analysis of Zinck v. Whelan, 120 *15 N.J. Super. 432 (1972), as to the foreseeable consequences of negligence in relation to the intervention of the activity of a thief. In Zinck the court held that the negligence or the ultimate liability of one who left the ignition key in a parked unlocked automobile to one who was injured by the negligence of the thief in the operation of the vehicle was for the jury. As stated in Zinck (at 445), "Foreseeability can in appropriate contexts extend to criminal activity by third persons." See also Hill v. Yaskin, 75 N.J. 139 (1977), and Genovay v. Fox, 50 N.J. Super. 538, 550 (App. Div. 1958), rev. on other grds. 29 N.J. 436 (1959).
In Czech v. Aspen Industrial Center, 145 N.J. Super. 597 (App. Div. 1976), certif. den. 73 N.J. 48 (1977), the court refused to impose liability on the owner of a factory building in which plaintiff, an employee of a tenant, had been mugged while ascending the common stairway leading to her place of employment. However, the court decided the case in cognizance of the fact that the attack had taken place in a commercial setting:
We are not here concerned with an apartment house or similar residential premises where the landlord had notice of a particular defect which required correction in order to minimize the probability of the occurrence of a criminal event. [at 600, citing Braitman, supra]
The court in McCappin v. Park Capitol Corp., supra, held that tenants could not recover for their losses by thefts from their apartment as against their multiple-apartment building landlord solely by reason of the failure of plaintiffs to establish proximate cause. The court did say, however:
* * * Recovery against a landlord for loss sustained because of theft must be predicated either upon the breach of a contractual obligation or upon a showing of negligence constituting the proximate cause of the loss. Peter Piper Tailoring Co. v. Dobbin, 195 Mo. App. 435, 192 S.W. 1044 (App. Ct. 1917): Benjamin v. Brooklyn Trust Co., 185 Misc. 296, 57 N.Y.S.2d 816 (Sup. Ct. *16 1945), appeal denied 269 App. Div. 939, 57 N.Y.S. 2d 846 (1945); cf. Ridgely Operating Co. v. White, 227 Ala. 459, 150 So. 693 (Sup. Ct. 1933). [42 N.J. Super. at 172]
We are of the view that in the instant case plaintiff produced sufficient proof to require that the factfinder, the jury, determine whether defendant was negligent. Although police records disclosed no prior reported criminal acts within the premises, the apartment building was in a neighborhood in which there had been civil disturbances in the years 1969-1971. There was testimony that in the period 1970-1973 there were many burglaries and crimes, such as purse-snatching, in plaintiff's neighborhood, making it a high-crime area. Cf. Hill v. Yaskin, supra, 75 N.J. at 146; that prior to the mugging defendant had received actual notice of unauthorized persons being in the apartment building. These included intoxicated persons seen in the rear of the building and in the cellar. Defendant herself had allegedly reported to defendant a cellar break-in prior to the date when she was attacked. Furthermore, according to plaintiff, defendant had agreed to install locks on the front door after having been informed by her of the break-in.
Defendant testified that he did not discuss the possibility of installing a lock on the front door with plaintiff or with any other tenant. But he answered plaintiff's interrogatory about whether there was a lock on the door of the building by stating, "There was always lighting in the common areas of said building. At that time, tenants did not want locks on the front door." When questioned about the interrogatory, defendant responded that the tenants' reluctance to have a lock was communicated to him after the mugging of plaintiff.
This evidence was sufficient to warrant denial of a directed verdict for defendant and to submit the issue of defendant's negligence to the jury.
Also contrary to defendant's argument, the proofs were likewise sufficient to create a jury issue on the issue of the *17 proximate cause of plaintiff's injuries. Defendant asserts that the attack took place so close in time and space to the entrance of the building that it demonstrates that even if a lock had been installed the criminal would have been able to gain entrance immediately behind plaintiff. We are not persuaded that this was so.
Plaintiff testified that she had proceeded what was estimated to be about 24 or 25 feet into the building and was actually ascending a flight of stairs when she was accosted. It is not necessary that the tortfeasor anticipate the very occurrence which resulted, so long as it can be said that the injury was the natural and probable consequence of the wrongful act and it was within the realm of foreseeability that some harm might result to the plaintiff. Andreoli v. Natural Gas Co., 57 N.J. Super. 356, 367 (App. Div. 1959).
As stated in McCappin v. Park Capitol Corp., supra:
To establish proximate cause, it is sufficient to show that according to the common experience of mankind the resulting injury was a reasonably foreseeable consequence of the negligent act. [42 N.J. Super. at 172]
We are satisfied that the proofs in the instant case conformed to the rule set forth in Flexmir, Inc. v. Lindeman & Co., 4 N.J. 509, 514 (1950), as stated in McCappin:
* * * [A] plaintiff is not required to prove with certainty that the defendant's act caused her damage; "the test is one of probability" but "the evidence must be such as to justify an inference of probability as distinguished from mere possibility." [42 N.J. Super. at 173]
Here the question of whether the ability of the intruder to injure plaintiff under the circumstances was enhanced by defendant's negligence was properly considered by the jury. It is possible that even with locks and other forms of security to prevent such occurrences an intruder could have obtained entrance into the building and perpetrated the same *18 crime. However, whether it was possible for the injuries to have been inflicted even had defendant been careful is not the test of proximate cause. The test, as shown, is one of probability  an issue in this case for the jury.

II
Defendant's second point is that the granting of the additur in the sum of $15,000 to increase the judgment to $18,000 was an abuse of discretion.
It cannot be gainsaid that the verdict was unreasonably small in the light of the nature of plaintiff's injuries, property losses and medical expenses. Her injuries consisted generally of a dislocation of her right shoulder, fracture of the neck of the left humerus, hemorrhage of the left ear, hairline fracture of the mandible and a chipped fracture of the right ankle. She was at the time of the incident 61 years of age. Her medical bills amounted to $2,619.12.
Defendant's complaint is (a) essentially that the additur of $15,000 is grossly disproportionate to the verdict and (b) that the size of the verdict in relationship to the injuries and expenses demonstrated that it represented a compromise of the issues on the part of the jury, so that a new trial as to all issues, rather than as to damages only, should have been directed.
Additur is "an order denying the plaintiff's application for a new trial on the condition that the defendant consent to an increase in the jury's award as specified by the trial judge." Bitting v. Willett, 47 N.J. 6, 9 (1966).
Whether to increase or decrease a verdict, or, alternatively, to grant a new trial as to all or part of the issues, is a matter within the discretion of the trial court, not to be disturbed by an appellate court, except where the interests of justice manifestly so require. [Epstein v. Grand Union Co., 43 N.J. 251, 252 (1964)]
No doubt the verdict of the jury was comparatively minimal when the injuries and losses are considered. But *19 this fact of and in itself does not signal that the verdict represented a compromise of the issues by the jury. There were occurrences during the trial which made it difficult for plaintiff to present her case in an orderly fashion. Because of the failure of treating doctors to respond to subpoenas, it was necessary for the judge to take action to require the presence of a doctor. The proofs were not presented in the usual order. Plaintiff's doctor appeared next to the last of defendant's four witnesses. He had not treated plaintiff for all of her injuries. It is clear that plaintiff suffered a handicap in endeavoring to present her case as to damages. The judge concluded that the additur was appropriate in order to avoid a "manifest miscarriage of justice."
Our review of the record discloses that there was ample proof of defendant's negligence and we do not believe that the jury's verdict was the product of compromise. Moreover, the jury had been scrupulously charged as to the proper method of reaching a verdict. We therefore conclude that the judge did not err either in directing the additur or in granting a new trial limited to damages.

III
Defendant next contends that it was prejudicially erroneous to permit Detective Franklin Failla to testify as to the high-crime quality of the Monroe Street neighborhood. Defendant complains that the detective's testimony was that of an expert, but that the detective was not qualified as an expert who could render an opinion as to the incidence of crime in the neighborhood.
Detective Failla was presented by plaintiff as a factual witness as to the surrounding circumstances of the neighborhood and was accepted as such by the court.
Failla testifed that he had been a city detective in Passaic from 1968 to 1976 and had been assigned to investigate the incident involving plaintiff. He also testified as to what his investigation disclosed. He concluded his testimony as *20 the last witness on October 6, 1976. The following morning, October 7, 1976, plaintiff's attorney recalled him to the witness stand and over the objection of defendant's attorney he testified as to events which occurred in the neighborhood of the apartment house in 1971, i.e., a large civil disturbance and street riots; that between 1970 and 1973 he estimated that he investigated 75 to 100 crimes in the area, consisting principally of burglaries and "street muggings."
In our view the detective's observation that the neighborhood was a high-crime area, based on his factual recital, was permissible under Evid. R. 56(1), which provides:
If the witness is not testifying as an expert his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue.

IV
Defendant's final contention is that the judge's charge in effect indicated that if the jury found any foreseeable harm to plaintiff, even without proof of proximate cause, they could find for plaintiff. The judge did tell the jury:
* * * In discharge of a landlord's duty to a tenant, the landlord is required to do whatever is reasonable under the circumstances known to him or which he is chargeable with knowing. In this case, the landlord was required to exercise reasonable care to so maintain a door which he had provided for the tenants; that it would protect tenants from acts, criminal acts, of third party [sic].
However, the judge also charged the jury as follows:
In this action the plaintiff has the burden of establishing by a preponderance of the evidence all the facts necessary to prove the following issues:
One. That the defendant was negligent.

*21 Two. That his negligence was a proximate cause of the occurrence.
Three. The damages * * * flowed from the injuries allegedly sustained by the plaintiff. [Emphasis supplied]
The trial judge gave the jury definitions of negligence, proximate cause, foreseeability and the plaintiff's burden of proof. Read as a whole, the charge is a fair and adequate summation of current New Jersey law regarding negligence in a landlord-tenant setting. We find no error in it, as contended by defendant.
Finding as we do, that defendant's contentions are without merit, the judgment is affirmed.
NOTES
[1] See discussion in concurring opinion in Braitman, 68 N.J. at 386-388.